[Crim. No. 11797. In Bank. Aug. 19, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. DONALD **A.** CAVANAUGH, Defendant and Appellant.

Donald A. Cavanaugh, in pro. per., and Gilbert F. Nelson, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

MOSK. J.—Defendant appeals from a judgment convicting him on three counts of armed robbery.[1] He contends that the trial court abused its discretion in limiting the number of corroborating alibi witnesses to be brought from Massachusetts to testify in his behalf, that it was prejudicial error to admit evidence of another robbery committed by defendant in California some two weeks after those charged, and that he

---

[1]Defendant was originally charged, in a fourth count, with burglary. At the close of the trial that count was dismissed on motion of the prosecution. The judgment as set forth in the clerk's transcript nevertheless states that defendant was found guilty of three counts of first degree robbery and one count of first degree burglary. We correct the judgment by striking therefrom the latter erroneous recital.

was identified at an unfairly constituted lineup. We have concluded that these contentions are without merit and hence that the judgment should be affirmed.

At 9:30 p.m. on November 12, 1964, four employees of a Von's Shopping Bag market were closing the store for the day when they were accosted by defendant. His face was pockmarked and he was wearing a gray or tan trenchcoat. According to the three employees who testified, Webster, Monette, and Lowery,[2] defendant "punched" what appeared to be a gun into Webster's side and ordered them "back into the market." He looked both ways outside the door, and called to another man who thereupon entered with him. It was subsequently learned that the name of defendant's confederate was Joseph Ponte.

With drawn guns, defendant and Ponte then demanded, "Take us to the back where the money is." The employees proceeded to a small room at the rear of the store, and turned on the lights. Defendant ordered Monette to open the safe. When Monette had difficulty in doing so because he was afraid, defendant told him to hurry "before the police come around" to check the store, and warned him to get the "safe open or I'll blow your head off like we did the last man."

With Webster's assistance Monette finally opened the outer portions of the safe, containing only rolls of coins; the inner portion was inaccessible because of a time lock. Defendant and Ponte placed the coins in a gunnysack, then ordered the employees to empty their wallets. They each handed over some cash, and were herded into the safe room.

The robbery took 15 or 20 minutes, and the employees had ample opportunity to see their assailants' faces. Thus Monette testified that as he gave defendant the store keys "I focused my gaze on his face and I tried to pick up every feature I could," in order to be able to identify him later; similarly, Webster testified that "I was looking at him very good." Immediately after the event the employees gave the police descriptions of the robbers; they subsequently selected defendant's picture from mug shots, and pointed him out at a lineup. At the trial the three eyewitness-victims positively identified defendant as one of the men who had robbed them.

The sole defense was alibi. Defendant was from the Boston area, and had been extradited from Massachusetts to stand trial. A friend of defendant, John Ragucci, testified that he

---

[2] The fourth employee, Murphy, was on army duty at the time of trial.

met defendant in October 1964 at a Halloween party at the house of one Peter Piso in Boston; that defendant was living in the basement of Piso's house, and Ragucci saw him there every day in the month of November 1964. In particular, the witness testified he saw defendant at another party at Piso's. on November 11, and the next night (i.e., the night of the robbery of Von's market) went out on a double date with defendant and one Patricia Kane. In the course of a vigorous cross-examination, however, it became apparent that the witness was confused as to the exact day of his double date with defendant.

Jeannette Sarno testified that defendant visited her house in Malden, Massachusetts, in the afternoon of Armistice Day, 1964.

Defendant took the stand and denied being in California at any time in the month of November 1964. He testified, rather, that he was living in the basement apartment of Peter Piso in Boston and saw John Ragucci every day during that period. On cross-examination defendant admitted he had come to California "just for one day" on October 14 or 15, 1964, but denied being a criminal commuter for one day on November 12. He further admitted he knew Ponte, who was also from Massachusetts. On redirect examination, defense counsel elicited from him the fact that he had met Ponte in early 1964 when both were inmates of a Massachusetts prison; and on recross, defendant admitted he had previously been convicted of armed robbery.

Defendant first contends that the trial court abused its discretion in limiting the number of corroborating witnesses to be brought from Massachusetts to support his alibi.

Article I, section 13, of the California Constitution declares *inter alia* that in all criminal prosecutions the accused shall enjoy the right "to have the process of the court to compel the attendance of witnesses in his behalf. . . ." A similar provision of the Sixth Amendment to the United States Constitution has been held to be an element of the due process of law guaranteed by the Fourteenth Amendment. (*Washington* v. *Texas* (1967) 388 U.S. 14, 19 [18 L.Ed.2d 1019, 1023, 87 S.Ct. 1920].) ▮ But as the compulsory process of a court ordinarily runs only to those persons who can be located within its jurisdiction, the *constitutional* provisions do not give the defendant a right to compel the attendance of a witness from beyond that jurisdiction. (*Minder* v. *Georgia* (1902) 183 U.S. 559 [46 L.Ed. 328, 22 S.Ct. 224]; *State* v.

*Smith* (1965) 87 N.J.Super. 98 [208 A.2d 171, 174]; cf. *Barber* v. *Page* (1968) 390 U.S. 719, 723 [20 L.Ed.2d 255, 259, 88 S.Ct. 1318, 1321].) It was to fill this gap that in 1937 the Legislature adopted the Uniform Act to Secure the Attendance of Witnesses From Without the State in Criminal Cases, with slight changes, as sections 1334 to 1334.6 of the Penal Code. This statute, accordingly, controls the issue now before us.[3]

Penal Code section 1334.3, based on section 3 of the uniform act, provides in relevant part that "If a person in any State, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations in this State,[4] is a *material* witness in a prosecution pending in a court of record in this State, or in a grand jury investigation, a judge of such court *may* issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. This certificate shall be presented to a judge of a court of record in the county of such other State in which the witness is found." (Italics added.)

█ The emphasized terms make clear that the statutory procedure need not be invoked unless the trial judge in the requesting state first determines that the proposed witness would be material: "Obviously this does not mean that all persons are material witnesses who are so designated by either party, or because they might possibly give pertinent evidence at the trial. Whether the witnesses are material can only be determined by the judge after hearing. At such hearing a showing that the testimony to be given by the witnesses is material must be made." (*State* v. *Fouquette* (1950) 67 Nev. 505 [221 P.2d 404, 410], cert. den. 341 U.S. 932 [95 L.Ed. 1361, 71 S.Ct. 799], 342 U.S. 928 [96 L.Ed. 691, 72 S.Ct. 369].) And even after such a showing, the statute declares only that the judge "may" issue the certificate of demand;

---

[3]In the following analysis it must be kept in mind that the question is one of statutory construction: although the uniform act is constitutional (*New York* v. *O'Neill* (1959) 359 U.S. 1 [3 L.Ed.2d 585, 79 S.Ct. 564]), it is not constitutionally *required*. "Neither the requirements of compulsory process nor of the Fourteenth Amendment [citing *Minder* v. *Georgia, supra*] demand that the state enact such legislation. . . . California could repeal its act tomorrow and no constitutional right of any defendant in a criminal action would be touched." (*State* v. *Blount* (1953) 200 Ore. 35 [264 P.2d 419, 426, 44 A.L.R.2d 711].)

[4]This is the reciprocity requirement, with which Massachusetts complied by enacting the uniform act in 1935.

in other words, the decision to bring even a material witness from out of state remains within his sound discretion. The statute has been consistently so construed (*People* v. *Newville* (1963) 220 Cal.App.2d 267, 274 [33 Cal.Rptr. 816]; *People* v. *Cahan* (1956) 141 Cal.App.2d 891, 901 [297 P.2d 715]; cf. *People* v. *Washington* (1967) 248 Cal.App.2d 470, 475 [57 Cal.Rptr. 487], and cases cited), as has its counterpart in our sister states (*State* v. *Smith* (N.J.Super. 1965) *supra,* 208 A.2d 171, 175; *State* v. *Lesco* (1965) 194 Kan. 555 [400 P.2d 695, 699], cert. den. 382 U.S. 1015 [15 L.Ed.2d 529, 86 S.Ct. 628]) and the federal system (*Thompson* v. *United States* (5th Cir. 1967) 372 F.2d 826, 828; *United States* v. *Zuideveld* (7th Cir. 1963) 316 F.2d 873, 880-881; *Feguer* v. *United States* (8th Cir. 1962) 302 F.2d 214, 240-241, and cases cited).

Applying these principles to the case at bar, we find no ground to disturb the challenged ruling of the trial judge. On March 4, 1966, when the cause was first called for trial, defendant moved for a continuance and for an order "to bring witnesses from Massachusetts." Proceedings were continued to March 8, at which time defense counsel filed a supporting affidavit, listing 11 proposed witnesses whom he desired to have brought from Massachusetts to testify. At the hearing, defense counsel advised the court that "every one" was an alibi witness; the affidavit, however, was somewhat vague as to the proposed testimony of several of these witnesses, and silent as to the remainder. Citing the inconvenience and expense of disrupting the lives of all the named persons on such an inadequate showing, the court ruled that "the number of witnesses, I think, that you have requested are all out of proportion to the realities of this situation. I am going to place your primary request off calendar. I am going to entertain a motion in due time from you to renew the motion for one witness, or perhaps two, after you have taken oral or written interrogatories and you have had a chance to evaluate which witness would be the most favorable towards your position. I am going to let you make that choice, but this number of witnesses for the limited probative value, I think, is all out of proportion."

Thereafter defense counsel submitted written interrogatories for his 11 proposed witnesses, the prosecution submitted brief cross-interrogatories, and the court appointed the Public Defender of Boston as commissioner to examine the witnesses, defendant's choice for that office. (See Pen. Code, §§ 1349-1362.) In due course the answers of seven of the witnesses

(four were unavailable or uncooperative) were received and filed.

After reading these answers, defense counsel moved that four of the seven witnesses who were interrogated—Peter Piso, John Ragucci, Jeanette Sarno, and Patricia Kane—be brought from Massachusetts. He acknowledged that these witnesses were desired "All on the theory that they will establish alibi." The court ruled, however, that "In my opinion the witnesses needlessly duplicated each other to a certain extent. I am going to order, at County expense, either Jeanette Sarno or Pat Kane and either Peter Piso or John Ragucci. I think that their testimony is substantially the same and there is no need to have that type of duplication." Defense counsel objected to the limitation, but conceded that "there is some duplication . . . there is an overlapping." The court explained wherein it found the requested testimony to be cumulative, and concluded, "I have to draw the line some place . . . and I am drawing it here, sir, . . . I have read these [interrogatories] and given them much thought. I am trying to, in my opinion, be as fair as I can about it. That will be the limitation that I make, sir."

The court then offered defense counsel a further postponement of trial to allow him time to decide which two witnesses he would like brought to California, but after a brief continuance counsel selected John Ragucci and Jeanette Sarno. The court made the necessary orders, and reminded counsel that "the depositions of the remaining witnesses will still be, of course, available" for use at trial.

The cause came to trial on June 16, 1966, before a different judge. At the close of the People's case, defendant renewed his request that "the other witnesses" also be brought from Massachusetts; the motion was argued and denied. After all the testimony in chief had been heard, defense counsel was granted permission to read to the jury the interrogatories of the absent witnesses *in toto*. To apprise the jurors of the background of the matter, moreover, the court first explained to them that "Defense counsel prepared some questions and these questions were posed to the witnesses in Boston by a representative from the Public Defender's Committee in Boston. . . .

"The defense counsel requested that all of these witnesses be permitted to be brought into California and testify, and he was granted permission to bring in two of the witnesses; the two witnesses that you have heard."

Finally, the court gave full instructions on alibi and on the weight to be accorded the deposition evidence. The jury were told that "Neither the prosecution nor the defense is required to call as witnesses all persons who are shown to have been present at any of the events involved in the evidence, or who may appear to have some knowledge of the matters in question in this trial;" and "you are not to decide an issue by the simple process of counting the number of witnesses who have testified on the opposing sides. The final test is not in the relative number of witnesses, but in the relative convincing force of the evidence." In particular, the court instructed, on defendant's request, that "In the present action certain testimony has been read to you by way of deposition. You are instructed that you are not to discount this testimony for the sole reason that it comes to you in the form of a deposition. It is entitled to the same consideration, the same rebuttable presumption that the witness speaks the truth, and the same judgment on your part with reference to its weight, as is the testimony of witnesses who have confronted you on the witness stand."

From the foregoing it appears that the court gave defendant and his counsel exemplary consideration, and did all that was reasonably possible to facilitate the presentation of the alibi defense to the jury. Defendant contends that the court's ruling was dictated by the expense that would be incurred if all the requested witnesses were brought from Massachusetts. Yet that expense, which is a charge against the county (Pen. Code, § 1329; Gov. Code, § 29603), could well be out of all proportion to the incremental benefit to the defendant from having additional witnesses in attendance.[5] Cost is but one of several factors properly to be considered by the court in reaching its decision, and there is no showing that it was given undue weight in the case at bar.

We are urged to reflect upon the inequalities inherent in the relative affluence of defendants. It is undeniable that a rich defendant will be able to pay from his own pocket the transportation and lodging expenses of his proposed out-of-state witnesses, while a poor defendant will lack that ability.

[5]For example, in *United States* v. *Zuideveld* (7th Cir. 1963) *supra*, 316 F.2d 873, 880-881, the defendant moved to compel the attendance, at public expense, of approximately 420 witnesses, located in most of the states of the Union and such foreign countries as Mexico, Costa Rica, South Africa, and Ethiopia. The trial court refused to honor the request, and the ruling was sustained on appeal as being well within its discretionary powers.

But the matter does not end there. If the witnesses are unwilling to come to this state, the rich defendant must resort in any event to the machinery of Penal Code section 1334.3 to obtain legal process compelling their attendance; and as noted at the outset, under that statute the decision to subpoena even a material witness remains within the discretion of the trial court. If on the other hand the witnesses are willing to come, the question whether they will be allowed to testify, once here, remains subject to the court's further discretion to exclude cumulative evidence at the trial. (Evid. Code, § 352; see generally, Note, 5 A.L.R.3d 238, 254-257.) It follows that the real issue in these cases is not whether "equality" has been achieved between rich and poor defendants, but whether on the facts presented the court abused its statutory discretion in declining to compel or allow the testimony of certain out-of-state witnesses. Thus viewed, it is apparent that any consequential discrimination between two such hypothetical defendants cannot be deemed "invidious" within the meaning of the equal protection clause. (See, e.g., *Douglas* v. *California* (1963) 372 U.S. 353, 356-357 [9 L.Ed.2d 811, 814, 815, 83 S.Ct. 814].)

The main thrust of defendant's objection to the limit placed on his out-of-state witnesses, it appears, is that the court erred in determining their proposed testimony to be largely cumulative; no two of those witnesses, he asserts, saw him at precisely the same time and same place during the month of November 1964. But such a mathematical correlation is not required to support the challenged ruling. We have compared the several answers to the interrogatories: some are immaterial by any standard (Mrs. Evelyn Hoey); others are so vague with respect to defendant's whereabouts in November 1964 as to be of doubtful materiality at best (Carol Donnelly); and still others, though material, are cumulative in all essential respects (John Ragucci and Peter Piso). The effect of the remainder is more debatable;[6] nevertheless, the issue

---

[6]Jeanette Sarno deposed (as she subsequently testified) only that defendant spent part of the afternoon on Armistice Day 1964, at her house in Malden, Massachusetts. Patricia Kane attested that she went out with defendant approximately five times between November 5-18, 1964, but could not specify the exact dates. When asked if she saw him on November 10, 11, or 12, she answered, "I couldn't say for sure. I'm pretty sure I have"; when asked if she knew his whereabouts on any of the above three dates, she replied, "I couldn't answer that"; and when asked if she saw him in the company of anyone else on those three dates, she answered, "I'm not sure." Finally, defendant's mother deposed that she saw her son on November 14 and 17, 1964, and "Several other times dur-

before us is not how we would have resolved that debate as an original matter, but whether the trial court abused its discretion in adopting the solution herein described.

 Discretion is abused only when "'the court exceeds the bounds of reason, all of the circumstances before it being considered.'" (*State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13], quoting from *Berry* v. *Chaplin* (1946) 74 Cal.App.2d 669, 672 [169 P.2d 453]; accord, *Estate of Walker* (1963) 221 Cal.App.2d 792, 796 [34 Cal.Rptr. 832].) In the light of defendant's meager showing of materiality and the substantially cumulative nature of much of the proposed testimony, we cannot say that the court "exceeded the bounds of reason" when it permitted defendant to select his two best witnesses for testimonial duty and to read the depositions of the others to a carefully instructed jury. Here, as in *United States* v. *McDevitt* (D.C. Ct.App. 1963) 195 A.2d 740, 741, "The trial court's determination was not arbitrary, capricious or unreasonable. . . . Therefore, we hold there was no abuse of discretion by the trial judge in denying process compelling the attendance" of a witness under the uniform act. Neither Penal Code section 1334.3, nor the guarantee of due process, requires any more.

Defendant's second contention is that the trial court committed prejudicial error in allowing the introduction of evidence of a second supermarket robbery committed by him in the Los Angeles area in November 1964. After Monette and Webster had testified for the prosecution, defendant requested and was granted permission to call one of his two alibi witnesses, Ragucci, out of order. As set forth above, Ragucci testified that he saw defendant in Boston every day of November 1964. The prosecution subsequently called Larry Morris, an employee of Ralph's Market in Long Beach, who testified that he saw defendant about midnight on the night before Thanksgiving 1964. Defendant objected to this testimony, and the prosecutor urged, out of the jury's hearing, that it was admissible on two grounds: first, "to rebut the testimony that he, the defendant, was out of the State during the entire month of November; and, secondly, it is on the grounds to show a subsequent offense which was of similar methodology

---

ing the month, the exact dates I cannot tell." She did not see him on November 10, 11, or 12, but stated that she spoke to him by telephone on November 12; the affidavit filed by defense counsel, however, reveals that Mrs. Cavanaugh previously told a defense investigator that the conversation in question took place on November 11.

as employed in the present offense.'' He made an offer of proof as to the respects in which the second robbery was similar to the first.[7] Defendant then complained of surprise, and the prosecutor pointed out that he had named all his witnesses before trial. After taking a recess to consider the matter, the court overruled the objection and allowed the testimony to proceed.

Morris thereupon related that defendant and Joseph Ponte, both wearing trenchcoats, appeared at the door of Ralph's Market at closing time and ordered him and five other employees ''Back into the store.'' Once inside, Morris saw that defendant had a gun. Defendant told the employees to take them ''Back in there'' where the money was kept, then made them sit on the floor while the night manager, Willard White, was ordered to open the safe. The outer portion of the safe contained rolls of coins, which defendant and Ponte appropriated; but when White was unable to open the inner portion of the safe because of a time clock, defendant threatened to ''blow [his] brains out.'' Both Morris and White scrutinized defendant's features during the robbery; they gave the police descriptions of him, picked him out at a lineup, and positively identified him in the courtroom during the present trial.

■ We need not be detained by defendant's charge that if the foregoing testimony ''was rebuttal evidence, it was certainly offered out of order.'' It was defendant who departed from the orderly presentation of evidence by calling Ragucci to the stand in the midst of the People's case. Moreover, when Ragucci stepped down the prosecution did not immediately put on the evidence of the Thanksgiving eve robbery, but continued with the evidence of the November 12 robbery by examining the third victim of that crime, the employee Lowery. From this we may infer that the subsequent evidence of the Thanksgiving eve robbery was introduced primarily as part of the People's case in chief. The fact that it also tended to rebut Ragucci's testimony[8] is of no consequence if it was otherwise admissible. (See *People* v. *Pike* (1962) 58 Cal.2d 70, 91-92 [22 Cal.Rptr. 664, 372 P.2d 656], and cases cited.)

■ The remaining question is whether the evidence of the

[7]For convenience and clarity we will hereinafter refer to the events at Von's market on November 12, 1964, as *a* robbery or *an* offense, i.e., in the singular.

[8]If defendant committed the Thanksgiving Eve robbery in Long Beach, as Morris and White testified, it is unlikely that Ragucci could have seen him in Boston ''every day'' in November 1964, as the latter testified.

Thanksgiving eve robbery was properly admitted for the purpose of showing identity through a *modus operandi* common to both that offense and the charged robbery. In this respect the case is controlled by our recent decision in *People* v. *Haston* (1968) *ante,* p. 233 [70 Cal.Rptr. 419, 444 P.2d 91]. We there reviewed in detail the principles governing the admission of such evidence, and concluded that "the inference of identity arises when the marks common to the charged and uncharged offenses, considered singly or in combination, logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offenses." (*Id. ante,* at p. 246.)

A number of similarities exist between the charged and the uncharged offenses in the case at bar. To begin with, in each instance the establishment victimized was a chain supermarket; the robbers struck at closing time, after the customers had left and as the employees were securing the store for the night; defendant wore a tan or gray trenchcoat, but neither a mask nor makeup; defendant herded the employees inside the store and ordered them to go "back where the money is"; and defendant became angry with the employee who was trying to open the safe, and threatened to "blow your head off" or "blow your brains out." As we observed in *Haston,* however, similarities of this nature do not of themselves amount to common marks of the requisite degree of *distinctiveness,* for "It is common knowledge that each and all of the indicated marks are shared not only by the charged and uncharged crimes herein involved, but also by very many armed robberies." (*Id. ante,* at p. 248.)

Yet, also as in *Haston,* there is in this case an additional and highly distinctive common mark, i.e., the presence of Joseph Ponte as defendant's confederate in the commission of both the charged and uncharged offenses.[9] When this fact is considered in combination with the other common marks listed above, "the other-crimes evidence has great probative value on

[9]In *Haston* the common confederate, McDowell, pleaded guilty to the charged offenses, and both he and the defendant took the stand and admitted they had jointly committed the uncharged offenses. In the case at bar defendant complains that the participation of Joseph Ponte was not similarly proved. But the record contains ample affirmative evidence, in the form of eyewitness testimony, that Ponte was defendant's confederate in both the charged and uncharged offenses. The People were

the issue of identity,'' a value which ''was sufficient to outweigh the prejudicial effect of the evidence, and . . . therefore the admission of such evidence was proper'' (*id. ante*, at p. 250.)

By supplemental brief defendant contends that the lineup at which he was identified was grossly unfair and hence in violation of due process of law. (*People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336].) We have carefully reviewed the record in this respect, and conclude that the general physical appearance of the other men in the lineup was not such as to render it ''unnecessarily suggestive and conducive to irreparable mistaken identification'' within the meaning of *Caruso* (*id.* at p. 187 quoting from *Stovall* v. *Denno* (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]).

The judgment is corrected by striking therefrom the words ''and BURGLARY (Sec 459 PC), a felony, as charged in Count 4, which the jury found to be Burglary of the first degree.'' As so corrected, the judgment is affirmed.

Traynor, C. J., McComb. J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

Appellant's petition for a rehearing was denied September 18, 1968.

---

not required, in prosecuting defendant, to prove Ponte guilty of these crimes beyond a reasonable doubt; it was enough to show the fact of his participation, like any other common mark, by a preponderance of the evidence. (Cf. *People* v. *Haston, ante,* at p. 252.) That burden was clearly sustained.