[Crim. No. 14770.   Second Dist., Div. Five.   June 11, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. BOBBY LYNN CRAWFORD et al., Defendants and Appellants.

Albert D. Silverman and John F. Dunne, Jr., under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J.—By consolidated information, defendant Crawford and defendant Daniels were charged in count I with violation of Penal Code section 187 (murder); in count II, with violation of Penal Code section 211 (robbery); and in count III, with violation of Penal Code section 211 (robbery).[1] It was further alleged that defendants were armed with deadly weapons during the commission of these offenses. On June 6, 1967, the public defender declared a conflict of interest in the representation of both defendants, and the court appointed private counsel, pursuant to Penal Code section 987a, to represent defendant Daniels. On August 23, defendants' motions to sever all counts, and for separate trials as to each defendant, were denied. On October 18,

---

[1] The violations charged in counts I and II occurred on February 14, 1967 at the time of a robbery of a liquor store. Those in count III occurred on March 22, 1967, at the time of a robbery of a Thriftimart grocery store.

defendants renewed their motions for separate trials and requested that count III be severed from counts I and II. These motions were argued and denied. Defendant Daniels' motion to suppress evidence regarding his identification in a police lineup was argued and denied without prejudice. On October 19, defendant Daniels was permitted to withdraw his plea of not guilty to count III. Defendant Daniels then pleaded guilty to count III, and admitted that he was armed with a deadly weapon at the time he committed the offense. The court fixed the offense at robbery in the first degree. At this time, defendant Daniels again moved for a separate trial from codefendant Crawford as to counts I and II. The motion was denied. On October 23, a jury was impaneled, and trial commenced. On October 24, following the testimony of the third witness for the prosecution, defendants renewed their motions for severance of trials and counts. At this time, the court severed count III from the trial of counts I and II. Defendant Crawford waived time for trial and jeopardy as to count III.

After trial by jury, defendants were found guilty as charged in counts I and II. Both the murder and the robbery were found to be in the first degree. Defendant Daniels was found to be armed at the time of the commission of the offenses. Defendant Crawford's motion to set aside the jury finding of his being armed was granted. Defendants' motions for new trial and to reduce the offense in count I were denied. Jury trial was waived regarding the penalty issue in count I. Probation was denied and defendants were sentenced to state prison for life as to count I, and for the term prescribed by law as to count II. Sentence as to count II was stayed until the sentence on count I was completed, at which time the stay was to become permanent. Defendant Daniels was also sentenced to state prison for the term prescribed by law as to count III, such sentence to run concurrently with that imposed on count I. Count III was dismissed as to defendant Crawford.

On the evening of February 14, 1967, at approximately 8 p.m., Mrs. Kennedy was sitting in a passenger car in front of a liquor store located at 2600 Southwest Drive, Los Angeles, while her husband went in to make a purchase. She observed two young Negro men walk in front of the store, hold a short conversation, and then walk away without entering the store. She testified that she observed these men for approximately one minute, and that it was dark outside. She made an

in-court identification of both defendants as being the men she observed that evening.

Shortly after the departure of Mrs. Kennedy and her husband, two young men entered the liquor store and engaged the clerk, Lucien Cox, in a conversation. The two youths left the store, but returned a short time later. One of the men, subsequently identified as Daniels, drew a gun and ordered Cox to lie on the floor. The owner, Sam Carasic, was behind the counter. Daniels approached Carasic, and a scuffle apparently took place over the gun. A shot rang out, and Carasic fell to the floor, mortally wounded.

Cox looked at mug shots on several occasions, looked at a suspect in a cell, and attended a lineup, but did not make an identification. He was also shown a composite drawing made by a police artist based on descriptions given by witnesses. Cox was shown more mug shots, and finally identified defendants Crawford and Daniels. Cox also attended a second lineup and tentatively identified defendants Crawford and Daniels. At trial, Cox made an in-court identification of both defendants.

A customer, Mrs. Mosely, was also in the store at the time the offenses took place. Her testimony was substantially the same as that of the witness Cox, except that she was unable to identify either defendant as being one of the persons involved.

To further establish the identity of the perpetrators of the robbery-murder which occurred on February 14, 1967, the prosecution, over the vehement objections of both defense counsel, introduced the following evidence of a subsequent robbery (the subject matter of the charge in count III) on the theory of *modus operandi*: On or about March 22, 1967, at approximately 10:55 p.m., defendant Daniels, armed with a gun, accosted Miss Sweeney, a clerk at Thriftimart Grocery Store located at 10113 Venice Boulevard, Los Angeles, and ordered her to open the door to the check cashing booth. Another clerk, Mrs. Wareham, upon observing the gun pointed at Miss Sweeney, opened the door on the latter's request. Defendants Daniels and Crawford, according to the testimony of Miss Sweeney, entered the check cashing booth and took the money that was in the money drawers. Daniels' gun accidentally discharged. Defendants thereafter walked out the back door of the store. A third man, who was standing facing the check cashing booth, started walking out of the store when the gun went off, and he followed the defendants

out. Miss Sweeney made an in-court identification of both defendants as being the perpetrators of this offense. Mrs. Wareham, the other clerk, testified to the same chronology of events and made an in-court identification of Daniels. Another witness, Mr. Brockway, was outside the store at the time of the robbery and testified that he observed three men fleeing the store in two cars. Brockway made a tentative in-court identification of Daniels as looking like one of the men. Another witness, Mr. Pierce, a customer in the store during the time of the robbery, made an in-court identification of Daniels as being a person he saw in the store just prior to the offense.

A ballistics expert of the Los Angeles Police Department testified for the prosecution as to a comparison he made between the spent bullet found in the grocery store and that extracted from the body of the decedent in the liquor store robbery-murder. He was unable to state positively that one gun shot both bullets, although both of the spent bullets were .45 caliber. A ballistics expert called by the defense testified that it was almost impossible to determine whether the spent bullets came from the same gun.

Defendant Daniels testified in his own behalf and denied any involvement in the robbery-murder of the liquor store on February 14, 1967. He further testified that he had pleaded guilty prior to trial to the robbery of the Thriftimart store. He stated that codefendant Crawford was present at the time of the Thriftimart robbery but that Crawford was not involved in such robbery. According to Daniels, a third man participated with him in that robbery, and Crawford merely went into the store to buy cigarettes, although Daniels stated that he never saw Crawford in the store. Defendant Crawford then took the stand and testified in his own behalf. He denied any involvement in either robbery, although he admitted that he was present at the time of the Thriftimart robbery, having entered the store to buy cigarettes.

■ Defendants complain of error in the admission of evidence concerning the subsequent robbery of the Thriftimart Grocery Store. Defendants contend that such evidence was not admissible to show *modus operandi*. This evidence was admitted on the basis that there existed a significant number of similarities between the subsequent offense and the charged offenses. Specifically, the People contend that the following factors were sufficient to establish a "common mark": (1) defendant Daniels was the gunman in each robbery; (2)

defendant Crawford was Daniels' accomplice in each robbery; (3) defendant Daniels discharged his weapon in each robbery; (4) defendant Daniels directed the victims and took the money in each robbery, and defendant Crawford acted as a "lookout"; and (5) the bullet slugs recovered from each robbery were .45 caliber.

The basic rules of law applicable to this contention were recently reviewed in *People* v. *Haston*, 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91] and *People* v. *Cavanaugh*, 69 Cal.2d 262 [70 Cal.Rptr. 438, 444 P.2d 110]. In *Haston*, it is stated (pp. 244, 246): "When . . . a primary issue of fact is whether or not defendant rather than some other person was the perpetrator of the crime charged, evidence of other crimes is ordinarily admissible if it discloses a distinctive *modus operandi* common to both the other crimes and the charged crime. [Citations.]. . . . The important point to be made is that, when such evidence is introduced for the purpose of proving the identity of the perpetrator of the charged offense, it has probative value only to the extent that *distinctive* 'common marks' give logical force to the inference of identity. If the inference is weak, the probative value is likewise weak, and the court's discretion should be exercised in favor of exclusion.''

On substantially similar if not more compelling factors than those enumerated in the present case, the court in *Haston* commented (pp. 247, 248): "We do not think that any of these 'common marks' . . . is of that distinctive nature necessary to raise a logical inference that the perpetrators of the prior offenses bearing such marks were the perpetrators of the charged offenses. (See *People* v. *Cramer, supra,* 67 Cal.2d 126, 129 [60 Cal.Rptr. 230, 429 P.2d 582].) It is common knowledge that each and all of the indicated marks are shared not only by the charged and uncharged crimes herein involved, but also by very many armed robberies. The language of the court in *People* v. *Adamson, supra,* 225 Cal. App.2d 74, at page 79 [36 Cal.Rptr. 894], is appropriate: 'If admission of proof of other crimes were to be hinged upon a showing of methods common to most or many robbery practitioners, then application of the inclusionary rule would be so broad as to nullify the principle that a defendant is not to be convicted because the prosecution can prove, on his prior (or subsequent) record, that he is a bad man. Assertion of the principle of exclusion as a preliminary to its avoidance becomes mere pretense.' . . . . We conclude that the common

874

marks to which we have adverted above . . . , considered singly or in combination, are insufficiently distinctive to raise the inference of identity necessary to invest the other-offenses evidence with significant probative value, and that the admission of this evidence on the basis of these marks would constitute an abuse of discretion. [Footnote reference omitted.]''

██ Both *Haston* and *Cavanaugh,* however, went on to hold that since the identity of the same confederates was established in the commission of both the charged and uncharged offenses, there was then a ''highly distinctive common mark'' which, when considered in combination with other common marks, provided a sufficient basis for the admissibility of evidence of other crimes. (*People* v. *Haston, supra,* at p. 249; *People* v. *Cavanaugh, supra,* at p. 273.)

In the present case, unlike in *Haston* and *Cavanaugh,* this ''highly distinctive common mark'' was vitiated by the presence and possible involvement of a third man. That is, three individuals were involved in the second robbery, whereas only two persons participated in the first robbery. Additionally, there is a conflict in the testimony as to which two of the three men were the active participants in the perpetration of the subsequent offense. Even accepting the prosecution's version of this subsequent robbery, from that point on, significant dissimilarities begin to emerge. The individuals in the first robbery carefully ''cased'' the liquor store before the offense and engaged an employee in extensive conversation; neither of these factors was present in the later offense. Daniels' accomplice in the first robbery gave only passive assistance, whereas in the second robbery his accomplice was an active participant. The discharge of the weapon in the first robbery was intentional, whereas in the second it was accidental. Lastly, the individuals involved in the first robbery made their escape on foot, whereas in the second robbery the persons involved drove away in two cars. Under these circumstances, we conclude that the court should have exercised its discretion in favor of exclusion, and that the admission of evidence relative to this subsequent robbery constituted an abuse of discretion.

██ Where the evidence, though sufficient to sustain the verdict, is extremely close, ''any substantial error tending to discredit the defense, or to corroborate the prosecution, must be considered as prejudicial.'' (*People* v. *Briggs,* 58 Cal.2d 385, 407 [24 Cal.Rptr. 417, 374 P.2d 257].) ██ Here, as in *Briggs,* the character of the evidence is ''such as requires

close scrutiny." (*Id.,* at p. 404.) We conclude that it is reasonably probable that a result more favorable to defendants would have been reached had the evidence of the Thriftimart robbery not been admitted.

Since the judgments must be reversed, we consider one other question that may arise on retrial.

■ Defendants contend that the trial court erred in denying their request to *voir dire* the identification witnesses out of the presence of the jury as to the fairness of the lineups which they attended. Collaterally, defendants assert that the lineups were conducted in an unfair manner. Since there is nothing in the record to support this latter assertion and we have concluded from an independent search of the record that the questioned lineups comported with the due process requirements of *Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967],[2] we need not consider defendants' primary contention, as no prejudice could have resulted.

The judgments are reversed.

Kaus, P. J., and Aiso, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 6, 1969. Mosk, J., was of the opinion that the petition should be granted.

---

[2]The lineups in the present case were conducted prior to June 12, 1967, the date of the decisions in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951].