**Francis T. GLYNN, Petitioner,**

v.

**Robert H. DONNELLY, as he is Superintendent of the Massachusetts Correctional Institution at Walpole, Respondent.**

**Misc. Civ. No. 72–103.**

United States District Court,
D. Massachusetts.

June 11, 1973.

See also 1 Cir., 470 F.2d 95.

James W. Kelleher, Boston, Mass., for petitioner.

Charles Chase, Asst. Atty. Gen., Boston, Mass., for respondent.

## MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

JULIAN, Senior District Judge.

This case is before the Court on a state prisoner's petition for a writ of habeas corpus. Petitioner Glynn was convicted in two jury trials (generally known as the "small loans" cases) on four indictments charging that he conspired to bribe, and did bribe, two executive officers of the Commonwealth of Massachusetts. Petitioner's convictions were affirmed by the Supreme Judicial Court in Commonwealth v. Beneficial Finance Co. et al., 1971 Mass.Adv.Sh. 1367, 275 N.E.2d 33.

Upon objection by petitioner to the preliminary hearing before a United States magistrate, this Court held a *de novo* hearing on the petition on January 29, 1973. By stipulation of the parties, only the legal claim embodied in paragraphs 9 and 13 of the petition is pressed in this proceeding. As to that claim, petitioner has indisputably exhausted his state judicial remedies. See Commonwealth v. Beneficial Finance Co., *supra*, at 1469–1470, 275 N.E.2d 33.

Paragraph 9 of the petition reads as follows:

"Verdicts in the First and Second Trials may not stand because the petitioner was denied Due Process of Law in violation of the Fourteenth Amendment to the Federal Constitution by the application of a rule authorizing the prosecutor to make to the judge (in jury cases) *ex parte* statements bearing on guilt and on disposition, as more fully set forth in paragraph 13 below."

Paragraph 13 of the petition, with record references and footnotes deleted, reads as follows:

"Ten *ex parte* applications for out-of-state process against Redfield and four other persons employed by American Investment were made by the prosecutor on July 20, August 16, October 21 and 26, 1966, to the trial judge who on each occasion granted the application and impounded the papers. The petitioner first heard of this some five months after the verdicts and sentences in the First Trial, and thereafter moved to revoke the impounding orders. It then appeared that on the opening day of the First Trial the prosecutor stated, and the trial judge certified to the California Courts, that Redfield had 'personal knowledge that a sum of money was delivered to another for the purpose of being paid to an executive officer . . . which matters he has testified to before the . . . Grand Jury.' Like statements as to personal knowledge were made on the other

occasions. None of these persons was called to the stand, though Redfield appeared in the courtroom on September 14, after adjournment, and was ordered to remain in Massachusetts until October 14, 1966, on an understanding between the Court, the prosecutor and Redfield's counsel that he might return to California until his presence was actually needed.

"Petitioner saved his rights by motion for new trial in the First Case, and by motion that the judge disqualify himself in the Second Trial, both motions being filed on July 18, 1967, and expressly claiming a violation of petitioner's rights under the Due Process Clause of the Fourteenth Amendment. Exceptions were duly taken to the denial of each motion and were incorporated, respectively, in petitioner's Assignment of Error No. 13 in his appeal from the First Trial and his Assignment of Error No. 6 in his appeal in the Second Trial, both appeals being taken to the Supreme Judicial Court under G.L. c. 278, ss. 33A–33G. Said appeals were heard together and were decided adversely to petitioner in a single opinion of the Supreme Judicial Court handed down on November 4, 1971. Mass.Adv.Sh. (1971) 1367 [275 N.E.2d 33]. In that opinion the Court decided that the trial judge acted properly in receiving, granting and impounding the aforesaid *ex parte* applications of the prosecutor:

'. . . we note that the Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings, adopted in Massachusetts as G.L. c. 233, ss. 13A–13D, contemplates that the materialty of the testimony of a witness be shown in the certificate of the judge of the demanding State, or else in separate proceedings commenced upon that certificate in the requested state. See People v. Cavanaugh, 69 Cal.2d 262 [70 Cal. Rptr. 438, 444 P.2d 110;] Re Stamler, 279 App.Div., 908 [111 N.Y.S.

2d 313]. Presumably, the judge of the demanding State is to satisfy himself that the testimony is in fact material. A bare allegation of materiality, on the part of the prosecution, may not afford a sufficient basis for this determination. State v. Fouquette, 67 Nev. 505, [221 P.2d 404] cert. den. 341 U.S. 932 [71 S.Ct. 799, 95 L.Ed. 1361]. Contrary to the defendants' contention, the judge here made no preliminary "findings of conspiracy" on the basis of the prosecution's representations. He merely discharged his duty under the statute. To hold that the prosecution's representations so prejudiced the judge as to preclude a fair trial would render useless the statutory procedure of G.L. c. 233, ss. 13A–13D. Neither the judge's certificate nor the representations were ever seen by the jurors, who, of course, were the finders of fact.' Mass.Adv.Sh. (1971) 1469–70.

This holding of the Supreme Judicial Court directly conflicts with the case of Haller v. Robbins, 409 F.2d 857, 859 (1st Cir., 1969).

"The rationale given for the decision of the Supreme Judicial Court, that 'the jurors, who, of course, are the finders of fact' never saw the papers filed under the *Uniform Law,* makes it clear that the rule allowing *ex parte* application to the trial judge does not extend to trials without jury. A defendant can thus completely escape the dangers of the rule by waiving a jury. It follows that the decisions violates the Due Process Clause of the Fourteenth Amendment by 'needlessly' encouraging waiver of the Sixth Amendment right to trial by jury. United States v. Jackson, 390

U.S. 570, 583 [88 S.Ct. 1209, 20 L.Ed. 2d 138]."

This Court concurs in petitioner's view that the constitutional question of whether the statutory procedure for securing the attendance of out-of-state witnesses, as employed by the state court trial judge in the first trial, violated petitioner's right to due process of law is not adequately answered by noting that the trial judge "merely discharged his duty under the statute." Nor does it suffice to say that the uniform law to secure the attendance of witnesses from without a state in criminal proceedings, M.G.L. c. 233, §§ 13A–13D, would be rendered "useless" if it were held that the "prosecution's representations so prejudiced the judge as to preclude a fair trial." Rather, the issue to be determined is whether petitioner was, in fact, deprived of a fair trial by the prosecution's *ex parte* communications with the trial judge.

In support of his contention that the statutory procedure, as applied, did deprive him of a fair trial, petitioner offers no evidence of prejudicial consequences in the conduct of the trial.[1] Instead, petitioner invokes the doctrine of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that, once a constitutional right has been shown to have been violated, a court, in order to hold the violation harmless, "must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.,* at 24, 87 S.Ct. at 828. In *Chapman,* it was "completely impossible to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioner's convictions." *Id.,* at 26, 87 S.Ct. at 829. On the basis of Chapman, argues petitioner, it is the respondent's

---

1. The parties stipulated that the record of this case would consist of the petition, return, traverse, Exh. 1 (consisting of authentic copies of certain pages of the record filed in the Supreme Judicial Court with respect to the appeals of petitioner from his convictions in the first and second trials), Exh. 2 (the opinion of the Supreme Judicial Court affirming petitioner's convictions), and a substitute stipulation. No transcript of evidence, either in the first or second trial, was offered in evidence in the instant proceeding.

burden to demonstrate beyond a reasonable doubt that the prosecution's *ex parte* communications with the trial judge were harmless.

Petitioner's argument rests upon a premise which this Court does not accept as valid. Specifically, petitioner assumes, as he must in order to invoke the support of *Chapman* and of Haller v. Robbins, 409 F.2d 857 (1st Cir. 1969), that it was constitutional error for the trial judge to pass upon the Commonwealth's requests for out-of-state witnesses under M.G.L. c. 233, §§ 13A–13D. Petitioner's assumption is based upon an unreasonable construction of the trial judge's statutory function under M.G.L. c. 233, §§ 13A–13D. It is clear that in certifying, for example, that "J. Miller Redfield, of Rancho Bernardo, County of San Diego, State of California, is a necessary and material witness for the Commonwealth of Massachusetts at such trial by reason of [the fact that he] has personal knowledge that a sum of money was delivered to another for the purpose of being paid to an executive officer of the Commonwealth of Massachusetts, which matters he has testified to before the Suffolk County Special Grand Jury . . .," the trial judge did not find as a fact that "a sum of money was delivered to another for the purpose of being paid to an executive officer of the Commonwealth of Massachusetts . . . ." Rather, the trial judge certified to the State of California that the testimony of J. Miller Redfield would be "necessary and material" to the Commonwealth of Massachusetts in its criminal prosecutions of petitioner and others. The basis of his certification that Redfield "is a necessary and material witness" was simply the representation of the Attorney General that Redfield "has personal knowledge . . . [etc.]." The question presented by each of the Attorney General's applications—and the only question resolved by the trial judge in issuing the certificates—was whether the alleged testimony of the requested witnesses would be "necessary and material" to the Commonwealth of Massachusetts. As noted by the Supreme Judicial Court in Commonwealth v. Beneficial Finance Co., *supra*, at 1469, 275 N.E.2d at 100, "[a] bare allegation of materiality, on the part of the prosecution, may not afford a sufficient basis" for the determination of the judge of the demanding state that the requested witness is "necessary and material." Thus, the Attorney General, and anyone else seeking to secure the attendance of an out-of-state witness under M.G.L. c. 233, §§ 13A–13D, must make a *prima facie* showing that the witness is material. See Dirring v. United States, 353 F.2d 519, 520 (1st Cir. 1965); Commonwealth v. Dirring, 354 Mass. 523, 530, 238 N.E.2d 508 (1968). Once such a showing is made by the applicant, the judge of the demanding state must determine whether the witness "is a material witness in a criminal proceeding pending in a court of record of this commonwealth, or in a grand jury investigation or proceeding which has commenced or is about to commence within the jurisdiction of such court of record." M.G.L. c. 233, § 13B. This is the only finding required by the statute. Reasonably interpreted, the trial judge's issuance of compulsory process was based upon that, and upon no other, finding. No other finding was required to obtain the attendance of out-of-state witnesses deemed necessary by the Commonwealth to prosecute the indictments. The judge did not pass upon the guilt or innocence of petitioner. Nor did he pass upon the credibility of the witnesses whose appearance was sought by the Commonwealth. None of them ever became a witness at any stage of the proceedings before the judge or trial jury. Neither their existence nor the applications, nor the prosecutor's *ex parte* statements, nor the judge's certificates were ever brought to the attention of the trial jury.[2] There is no "reasonable possibility

---

2. Cf. Chapman v. California, *supra*, in which the prosecutor's remarks and the judge's instructions were addressed to the jury.

that the [*ex parte* statements] complained of [or the judge's certificates] might have contributed to the conviction" of petitioner. See Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed. 2d 171 (1963), cited in Chapman v. California, *supra*, 386 at 23, 87 S.Ct. 824. The verdicts of guilty, therefore, were not tainted by federal constitutional error and the rule in *Chapman* is inapplicable.

■ There is likewise no reasonable possibility that the prosecutor's statement to the judge and the latter's certificates to the California courts might in any way have prejudiced petitioner with respect to the sentence which was imposed upon him.[3] What was stated *ex parte* to the judge by the prosecutor and what was stated by the judge in his certificates would have been relevant only to the issue of guilt and would have added nothing that is not necessarily implied in the verdicts of guilty themselves. Nothing in aggravation of the offenses of which petitioner stands convicted could reasonably be inferred from the prosecutor's statements to the judge or from the judge's certificates. There is no federal constitutional infirmity in petitioner's sentences, and neither *Chapman* nor *Haller* can avail petitioner.

For the foregoing reasons, the Court rejects petitioner's contention that the verdicts and sentences in the first and second trials may not stand because petitioner was denied due process of law by the operation of M.G.L. c. 233, §§ 13A–13D.

■ Petitioner also contends that the procedure authorized by the uniform law violates the due process clause of the Fourteenth Amendment "by 'needlessly' encouraging waiver of the Sixth Amendment right to trial by jury," citing United States v. Jackson, 390 U.S. 570, 583, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). The underlying assumption of petitioner's argument is that the Supreme Judicial Court, in noting that "the jurors . . were the finders of fact," held that the uniform law does not extend to trials without jury. Thus, petitioner argues, "a defendant can . . . completely escape the dangers of the [uniform law] by waiving a jury." Petition, ¶ 13.

■ . Even assuming that petitioner is correct in his interpretation of what appears to be dictum in Commonwealth v. Beneficial Finance Co., *supra*, at 1470, 275 N.E.2d 33, petitioner cannot be heard to complain that he (as opposed to "a defendant") was needlessly encouraged to waive a trial by jury. The undisputed fact is that petitioner did not waive his right to a jury trial, either in the first or second trial. Nor does the record before this Court even suggest that petitioner ever considered such a waiver in light of the uniform law.[4]

The Court, therefore, rejects petitioner's claim that the uniform law imposed an impermissible burden upon the exercise of his constitutional right to a trial by jury.

For the foregoing reasons, it is ordered that the petition for a writ of habeas corpus be, and the same hereby is, denied.

---

3. Cf. Haller v. Robbins, *supra*, in which the prosecutor's *ex parte* communication was directed to the sentencing judge.

4. According to the petition, petitioner first learned of the use of the uniform law "some five months after the verdicts and sentences in the First Trial . . . . ." Petition, ¶13.