Stephen Ray BUNCH, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Sept. 15, 1980.

Thomas Boyers, IV, Gallatin, for petitioner.

William O. Kelly, Asst. Atty. Gen., Nashville, for respondent; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Chief Justice.

Petitioner Bunch, along with Patricia Palmer and Frank Graybeal, was jointly charged, tried and convicted in the trial court of the offense of armed robbery and sentenced to a term of imprisonment of 25 years. All three defendants appealed to the Court of Criminal Appeals which affirmed their convictions; Bunch and Palmer petitioned this Court for certiorari review which was denied for Palmer but granted for Bunch in order that we might consider his claim that the trial court committed reversible error by permitting the introduction of evidence that the defendants committed another robbery earlier on the same date as the robbery for which they stand convicted in this case.

We conclude that no error was committed and affirm the conviction.

## I

The conviction in the instant case was for the armed robbery of the Hendricks Grocery in Hendersonville, Tennessee. This robbery occurred between 3:00 p. m. and 4:00 p. m. on September 6, 1977. Over the objection of the defendants, the trial court permitted the State to introduce testimony that the three defendants, Bunch, Palmer and Graybeal, had committed an armed robbery of the White Front Cafe in Old Hickory, Tennessee, at approximately 11:00 a. m. on the same date. Old Hickory, Tennessee, is but a few miles from Hendersonville, Tennessee. This is the evidence now challenged upon appeal.

We believe that the case can be better understood if we state the facts in the chronology in which they actually occurred. Witnesses James Hale, Virgil Jarvis, Thomas J. Ray, and Ruby Lee Rogers gave testimony of the White Front Cafe robbery in Old Hickory. At about 11:00 a. m. on September 6, 1977, Bunch, Palmer, and Graybeal entered the tavern. Bunch asked Mr. Jarvis to play a game of pool with him. When Mr. Jarvis declined to do so, the defendant Bunch engaged Mr. Hale in a game of pool. Shortly, the defendants, Bunch and Graybeal, produced pistols and directed all those present to "hit the floor." Witness Jarvis returned from a restroom on the premises to find the robbery in progress. The three defendants robbed all those present, taking $750.00 from Mr. Ray. The four eyewitnesses, above named, identified the robbers as defendants, Bunch, Palmer and Graybeal. Following the robbery, the three defendants Bunch, Palmer and Graybeal left the cafe together. All three defendants on trial in the instant case objected to the introduction of the foregoing evidence but the trial judge admitted it, cautioning the jury that it was admitted only to show that the three defendants had been together earlier that day.

Mrs. Itacia Hendricks was the owner and operator of the Hendricks Grocery in Hendersonville, Tennessee. Between 3:00 and 4:00 p. m. on September 6, 1977, a man and woman entered her place of business, brought some grocery items to the counter as if to purchase them, then pulled a gun on her and took money from her cash register and other money hidden in a tackle box. She identified these two robbers as defendants, Graybeal and Palmer. Although she did not identify Bunch as one of the robbers, she testified that he had been a customer on an occasion prior to the robbery.

James Williams who owned the Williams Body Shop situated near to the Hendricks Grocery, testified that on the afternoon of the robbery he saw a 1967 Chevelle automobile, painted red with a black hood, drive up to the front of the Hendricks Grocery Store and that there were three persons in the car. Steve Oeser, an employee of Williams, stated that he was in the grocery when Palmer and Graybeal entered and that as he left the premises he saw a red 1967 Chevelle with a black hood parked in front of the grocery store with a man sitting in the driver's seat at the steering wheel. He did not identify this individual as the defendant Bunch, however.

On the day following the robberies of the White Front Cafe in Old Hickory and the Hendricks Grocery in Hendersonville, Officer Mark Henderson of the Robertson County Sheriff's Department received a report of a robbery of the Whites Creek Bank and an alert to be on the lookout for an "old model red car." While on patrol near Springfield, Tennessee, in Robertson County,[1] Officer Henderson spotted a red 1967 Chevelle with a black hood and decided to stop the car for investigation with respect to the bank robbery. When he turned on his flashing blue lights, a six mile high speed chase ensued which ended ultimately in the wreck of the pursued vehicle. Officer Henderson identified the defendant Bunch as the driver of this automobile. Soon after the chased automobile was wrecked, the defendant Palmer surrendered to the officers. Defendants Bunch and Graybeal went into nearby woods but within an hour they were captured, too. A

---

1. Robertson County adjoins Sumner County in which the Hendricks Grocery was situated.

search of the area where defendant Bunch was arrested led to the discovery of a woman's red purse which contained a change purse with a roll of paper currency. This purse contained money totaling $1,236.00. Witnesses, Williams and Oeser, identified this wrecked automobile, from which the defendants Bunch, Palmer and Graybeal had fled, as being the same automobile as they saw in front of the Hendricks Grocery at the time of its robbery on September 6, 1977.

Later it was learned that the defendants were not the robbers of the Whites Creek Bank but they were charged with the robbery of the Hendricks Grocery Store.

In summary, then, the chronology is as follows:

A. September 6, 1977, at 11:30 a. m.: Bunch, Graybeal and Palmer robbed the White Front Cafe at Old Hickory and are positively identified by eyewitnesses.

B. September 6, 1977, at 3:30 p. m.: Graybeal and Palmer robbed the Hendricks Grocery in Hendersonville and are positively identified by eyewitnesses. A third person, a male, was sitting at the steering wheel of the getaway car, a red 1967 Chevelle with a black hood.

C. September 7, 1977: Defendants Bunch, Graybeal and Palmer, in a red 1967 Chevelle with a black hood, flee from an investigating officer in Robertson County in a high speed chase which ends in the wrecking of their automobile and their fleeing into nearby woods where they are captured within an hour. This automobile is identified as the same one which was the getaway car for the robbery of the Hendricks Grocery.

## II

It is well established, of course, that in a criminal trial evidence that the defendant has committed some other crime wholly independent of that for which he is charged, even though it is a crime of the same character, is usually not admissible because it is irrelevant. *Mays v. State*, 145 Tenn. 118, 238 S.W. 1096 (1921); *Lee v. State*, 194 Tenn. 652, 254 S.W.2d 747 (1953). Moreover, because of the obvious prejudice of such evidence to the defendant its admission often constitutes prejudicial error, requiring the reversal of a conviction. *Gray v. State*, 191 Tenn. 526, 235 S.W.2d 20 (1950). However, if evidence that the defendant has committed a crime separate and distinct from the one on trial, *is relevant* to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted.

On occasions, evidence of crimes other than that on trial has been admitted as being relevant to such issues on trial as motive of the defendant, intent of the defendant, the identity of the defendant, the absence of mistake or accident if that is a defense, and, rarely, the existence of a larger continuing plan, scheme, or conspiracy of which the crime on trial is a part. *Collard v. State*, Tenn., 526 S.W.2d 112 (1975); *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963); Rule 404(b), *Federal Rules of Evidence*; Rule 404, *Uniform Rules of Evidence*; *McCormick on Evidence* § 157 (1954).

In *Harris v. State*, 189 Tenn. 635, 227 S.W.2d 8 (1950), this Court stressed that evidence that the defendant had committed a crime other than that on trial was not admissible unless such evidence tended directly to prove his guilt of the offense with which he was charged and that to render such evidence of another crime relevant to the case on trial, its purpose and its effect must be to show more than the mere fact that the defendant is the kind of person who would not scruple to commit the kind of offense with which he is charged and that probative force could not be accorded to the mere fact that the defendant, either prior or subsequent to the commission of the offense on trial, had committed another like crime.

■ We note, too, that evidence that the defendant committed another crime is admissible only if the ground for relevance is actually being contested in the case on trial; the rule should not be circumvented by admitting evidence of another crime to show identity of the defendant if the defendant admits that he committed the act charged but bases his defense on some other ground, such as, self–defense, *Wilson v. State*, Tenn.Cr.App., 548 S.W.2d 323 (1976), or if the identity of the accused is established by other evidence and, therefore, is no longer in issue. *Warren v. State*, 178 Tenn. 157, 156 S.W.2d 416, 419 (1941). In the *Warren* case this Court stated:

"The admission of such evidence should at all times be carefully guarded and restricted to cases in which its introduction is called for to establish more clearly the identity of the accused. If identity has been otherwise clearly made out, such evidence should not be introduced, since in such case it could have no other effect than to prejudice the defendant by establishing his guilt of an independent crime, and we do not intend to recognize or approve the admission of such evidence when this is its purpose and only effect."

■ When evidence that the defendant committed another crime is offered to prove his identity as the perpetrator of the crime on trial, the *modus operandi* of the other crime and of the crime on trial must be substantially identical *and must be so unique* that proof that the defendant committed the other offense fairly tends to establish that he also committed the offense with which he is charged. This requirement has been well stated in *United States v. Powell*, 587 F.2d 443 (9th Cir. 1978) as follows:

"The probative value of evidence of other crimes where the issue is identity depends upon the extent to which it raises an inference that the perpetrator of the prior offenses was the perpetrator of the offense in issue. Both the existence and the strength of an inference proceeds through an evaluation of the similarities between the prior offense and the charged crime. Thus, if the characteristics of both the prior offense and the charged offense are not in any way distinctive, but are similar to numerous other crimes committed by persons other than the defendant, no inference of identity can arise. An inference of identity from prior crimes can only arise when the elements of the prior offense and the charged offense, singly or together, are sufficiently distinctive to warrant an inference that the person who committed the prior offensen also committed the offense on trial. . . . The probative value of evidence of other crimes on the issue of identity always depends upon the strength of the inference; when the inference of identity is weak, evidence of prior crimes should be excluded because under such circumstances the prejudicial effect of the evidence inevitably outweighs the probative value of that evidence." 587 F.2d at 448.

Our own cases are in accord with the foregoing statement. *See: Wrather v. State*, 179 Tenn. 666, 169 S.W.2d 854 (1943); *Caruthers v. State*, 219 Tenn. 21, 406 S.W.2d 159 (1966). [Perhaps the best expression of this requirement found in our own cases is that by Judge Tatum in *Young v. State*, Tenn.Cr.App., 566 S.W.2d 895 (1978).]

The robbery of the White Front Cafe and the robbery of the Hendricks Grocery did have certain features in common, e. g., (1) both robberies were perpetrated by a team composed of three robbers, two men and one woman, (2) in both robberies the perpetrators closeted their victims in restrooms before leaving the premises, (3) the two business establishments robbed were located close to each other and (4) the two robberies occurred fairly close in time to each other, the White Front Cafe at 11:30 a. m. and the Hendricks Grocery at 3:30 p. m. on the same day.

Like similarities were shown to exist in *People v. Cavanaugh*, 69 Cal.2d 262, 70 Cal. Rptr. 438, 444 P.2d 110 (1968), cert. denied 395 U.S. 981, 89 S.Ct. 2139, 23 L.Ed.2d 768, and *People v. Haston*, 69 Cal.App.2d 233, 70 Cal.Rptr. 419, 444 P.2d 91 (1968). In the

*Cavanaugh* case the issue was whether evidence of the defendants' robbery of one supermarket was admissible upon their trial for robbing a second supermarket. In each robbery the two robbers were wearing the same distinctive clothing, said the same things to their victims, always led their victims to the back of the store, and performed their robberies just before closing time. Although acknowledging these similarities, the court held that they did not "logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety." 70 Cal.Rptr. at 445, 444 P.2d at 117. In the *Haston* case, *supra*, the court said:

"It is common knowledge that each and all of the indicated marks are shared not only by the charged and uncharged crimes herein involved, but also by very many armed robberies. . . . 'If admission of proof of other crimes were to be hinged upon a showing of methods common to most or many robbery practitioners, then application of the inclusionary rule would be so broad as to nullify the principle that a defendant is not to be convicted because the prosecution can prove, on his prior (or subsequent) record, that he is a bad man.' " 70 Cal.Rptr. at 429, 444 P.2d at 101.

Nevertheless, the court in each of these cases upheld the admissibility of evidence of other crimes because of a unique factor which is also present in the case at bar, *viz.*, in each of the prior robberies, the defendants on trial had an accomplice or accomplices who were also present at the time of the commission of the charged crime. In the *Cavanaugh* case the court referred to this factor as "a highly distinctive common mark" which when "considered in combination with the other common marks listed above, 'the other–crimes evidence has great probative value on the issue of identity, . . .' . .' " 70 Cal.Rptr. at 430, 444 P.2d at 102. In the *Haston* case the court sustained the admission of evidence of the other robbery although it found marked dissimilarities between the crime charged and the prior crime, referring to the unique factor of the common accomplice as follows:

"It is clear that McDowell's presence, unlike the other features common to the charged and uncharged offenses, is a mark whose distinctive nature tends to differentiate those offenses from other armed robberies. There is only one Donald McDowell, and his conjunction with defendant in earlier robberies, together with his admitted participation in the robberies charged, supports the inference that defendant and not some other person was his accomplice in those charged offenses. It thus appears that evidence of the uncharged offenses has *some* probative value on the issue of identity." 70 Cal.Rptr. at 430, 444 P.2d at 102. (Emphasis by the court.)

In the instant case defendants, Graybeal and Palmer, were positively identified by eyewitnesses at both the White Front Cafe and the Hendricks Grocery robberies. Also, defendants, Bunch, Graybeal and Palmer, were found on the day following the Hendricks robbery in an automobile driven by Bunch which met the description of the automobile used as the getaway car in the Hendricks Grocery robbery. Therefore, we conclude that evidence that the defendant Bunch committed the White Front Cafe robbery with Graybeal and Palmer is relevant and admissible on the issue of identity of the third participant in the Hendricks Grocery robbery, the unidentified male who waited outside in the driver's seat of the getaway car.

To be relevant and, therefore, admissible, it is not necessary that the other crime be identical in every detail to the offense on trial; it is sufficient if evidence of the other crime supports the inference that the perpetrator of it, shown to be the defendant, is the same person who committed the offense on trial.

We, therefore, conclude that evidence that defendant Bunch committed the White Front Cafe robbery with the defendants, Graybeal and Palmer, was properly admitted upon the issue of the identity of defendant Bunch as one of the perpetrators of the robbery of the Hendricks Grocery.

**232**

In our opinion, the probative value of such evidence is not outweighed by its prejudicial effect upon the defendant.

We have considered other contentions of the defendant that the trial court erred in various respects but find them to be without merit.

The judgment of conviction is affirmed and costs incurred upon appeal are assessed against the defendant.

FONES, COOPER and HARBISON, JJ., concur.