# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
April 19, 2006 Session

## STATE OF TENNESSEE v. DAVID BOYD CONNER, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-B-1684     Steve Dozier, Judge**

---

**No. M2005-01628-CCA-R3-CD - Filed December 5, 2006**

---

The defendant appeals his convictions of seven counts of aggravated sexual battery, alleging error in the following respects:  1) the evidence was insufficient to support the convictions; 2) the trial court erred in the defendant's motion for severance; and 3) the trial court erred in admitting into evidence the videotaped statement of the defendant's interview.  Our review revealed no reversible error, and the convictions are hereby affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES, J., joined.  JOSEPH M. TIPTON, P.J., filed a concurring opinion.

James Robin McKinney, Jr., Nashville, Tennessee, for the appellant, David Boyd Conner, Jr.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

David Boyd Conner, Jr., the defendant, was charged in an indictment with four counts of aggravated sexual battery (Class B felony), one count of attempted child rape (Class B felony), and three counts of rape of a child (Class A felony).  A jury returned guilty verdicts as to seven counts of aggravated sexual battery and one count of assault (Class B misdemeanor) which was merged into one of the aggravated battery convictions.  The defendant was sentenced to an effective thirty-two years of incarceration, to be served at 100%.  The defendant now appeals his convictions.

Factual Background

The investigation that led to the charging indictment was initiated on May 5, 2003.  The eight-year-old victim, M.W., resided with his family in East Nashville.  The victim's nuclear family

included his parents and three siblings. Two other relatives, the defendant and Larry Paul Wilson, also resided with the family. The defendant is a cousin of the victim's mother, and Larry Paul Wilson is a brother of the victim's father. On the night of May 5, 2003, Larry Paul Wilson discovered the defendant in bed with the victim in incriminating circumstances. The parents were alerted, and the Metro Police were called. An investigation followed, which eventually resulted in the defendant's indictment and trial.

The victim testified that he lived with his parents and three siblings. In May of 2003, the defendant and Larry Paul Wilson, the victim's uncle, were also staying with the family. The victim had his own bedroom and slept in a twin-sized bed. The victim said that the defendant had gotten into bed with him many times before his discovery on May 5, 2003. The victim said the defendant would "mess with me" and described verbally and by using demonstrative dolls the actions of the defendant. The defendant had at times touched the victim's penis and moved his hand up and down. The defendant had placed his penis in the victim's rectum on more than one occasion. This occurred both with the victim on his side and on his stomach. The defendant had also taken the victim's penis in his mouth and moved up and down. These events occurred for a period longer than a week.

Carolyn Smeltzer was a nurse practitioner employed by Our Kids Center. Ms. Smeltzer was accepted as an expert in the area of forensic nurse practitioner. She testified that she performed a physical exam of the victim at 4:00 a.m. on May 6, 2003. A culpascope was used to examine the victim's anus, and a medical-legal examination (rape kit) was completed. No tears or fissures were noted, and the anal opening appeared normal. No traces of semen were detected. Ms. Smeltzer explained that due to the flexibility of the anus, it can be penetrated without causing injury. She stated that her findings were not inconsistent with the history of molestation provided by the victim.

Detective Robert Carrigan was assigned to Youth Services Division within Nashville Metro Police Department. Detective Carrigan had responded to the victim's home on May 5 and later interviewed the defendant and recorded the session on videotape.

Larry Paul Wilson testified that he had been staying with the victim's family for two weeks when he found the defendant in the victim's bed. Mr. Wilson and the defendant slept in the den where Mr. Wilson slept on a bed and the defendant slept on a couch. Mr. Wilson said that on the night of May 5, all family members were in bed except he and the defendant. The defendant looked in the living room as if to locate Mr. Wilson and then disappeared. Shortly afterwards, Mr. Wilson went to the victim's room. He stated the door was shut, and he opened it and turned on the light. He then pulled back the cover on the victim's bed and saw the defendant lying on his side behind the victim in a spoon position. The defendant's pants were unzipped, and the defendant was attempting to hide an erection. The victim was wearing only his underwear. When Mr. Wilson asked the defendant what he was doing, the defendant responded that he had been to the bathroom and had forgotten to zip his pants. Mr. Wilson then woke the victim's parents and, after some discussion, the police were notified.

On cross-examination, Mr. Wilson stated that he had been diagnosed as bipolar and had been taking medication for manic depression. He also admitted having smoked marijuana at 8:00 p.m. the night of May 5.

Officer Heather Martin Baltz was dispatched to the victim's residence on May 5. She detained the defendant in her squad car. The defendant made several spontaneous remarks to her. The defendant stated that he must have forgotten to zip up after going to the bathroom and before getting into the victim's bed. Officer Baltz said the defendant's demeanor was very calm.

Sergeant Brenda Steinbrecher responded to the victim's residence and briefly spoke with the victim. The victim said he did not know if the defendant had hurt him. When she asked the victim if the defendant had touched him in private places, the victim's eyes teared and his lip quivered. When she asked again if he was hurt, the victim gestured yes. Sergeant Steinbrecher then terminated her questioning.

The victim's mother, Lynn Wilson, testified that the defendant had lived with her family from January 2000 through May 2003, except for a period from August to October of 2002. She stated that she was unaware that the defendant had slept with the victim. Mrs. Wilson said the victim's bedroom was kept open. She also revealed that the victim had previously asked his father to put a lock on his bedroom door. The victim had also asked to sleep with his parents. The victim's grades had fallen markedly in the fall of 2002. Counseling had been arranged for the victim after this incident and was continuing at the time of trial.

Robert Wilson, the victim's father, testified that he was unaware that the defendant had been sleeping with the victim at various times. The defendant never stated that he slept in the victim's room in order to be wakened earlier.

The redacted videotaped interview of the defendant, as conducted by Detective Carrigan, was played for the jury. During the interview, the defendant stated that he is a practicing homosexual. The defendant stated that he had no current partner and had only had three homosexual experiences. The defendant said that on this occasion he had gone to the bathroom and had forgotten to zip his pants before getting into bed with the victim. The defendant stated that he left the victim's door open an inch. The defendant denied ever touching the victim's private area and denied that he was aroused when discovered by Larry Paul Wilson. The defendant estimated that he slept in the victim's room once or twice every two weeks. The defendant claimed that the victim's parents were aware of this. The defendant gave two rationales for sleeping with the victim: to be awakened earlier and when the victim requested it.

The State concluded its proof, and the defendant, after voir dire, chose not to testify.

Analysis

Sufficiency of the Evidence

The defendant contends that the evidence was "completely inconsistent" with the State's theory. The defendant's contention is based on the lack of forensic evidence which would corroborate the witness's testimony. We respectfully disagree in that this argument ignores the testimony of witnesses which, if accepted by the jury, is sufficient to support the convictions.

This court must reject a challenge to the sufficiency of the evidence if, after considering the evidence in the light most favorable to the prosecution, it determines that <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning witness credibility were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 641, 659 (Tenn. 1997).

The defendant was convicted on seven counts of aggravated sexual battery and one count of assault. The assault conviction was merged with the aggravated sexual battery in count one of the indictment.

Aggravated sexual battery is defined, in part, as "unlawful sexual contact with a victim by the defendant or the defendant by a victim" when the victim is less than thirteen years of age. T.C.A. § 39-13-504(a).

> "Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

T.C.A. § 39-13-501(6).

There was testimony by the victim's uncle that he discovered the defendant in a compromising position on the night of May 5. The witness described how the defendant was behind the victim in a "spoon fashion" with his pants unzipped and with an erect penis. The victim confirmed that this had occurred previously on several occasions. The victim related accounts of the defendant performing anal intercourse on him, both with the victim on his side and on his stomach. The victim gave an account of the defendant performing fellatio and, on other occasions, touching and stroking the victim's penis. Other offenses were described by the victim relating to the defendant placing his penis on the victim's buttocks with the defendant on his side and on his stomach. These accounts by the victim were accepted by the jury. Conversely, the defendant's attempts during his interview to place his actions in an innocent light were rejected. We will not reweigh the evidence or disturb the inferences drawn by the jury from the evidence. We conclude that the evidence was sufficient to support the convictions.

Severance

The defendant next alleges error by the trial court in denying the defendant's motion to sever the various counts of the indictment. In reviewing a trial court's decision regarding severance of offenses, we look to the evidence presented at the motion hearing, along with the trial court's findings of fact and conclusions of law. Spicer v. State, 12 S.W.3d 438, 445 (Tenn. 2000). We review the trial court's decision under an abuse of discretion standard. State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). This court will not interfere with the exercise of this discretion unless it appears on the face of the record that the accused was prejudiced by the court's ruling. State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982).

In most instances, the trial court's discretion in severing offenses is greatly limited by Rules 8 and 14 of the Tennessee Rules of Criminal Procedure. See Shirley, 6 S.W.3d at 246. Rule 8(a) mandates multiple offenses be joined if they are based on the same conduct or arise from the same criminal episode unless they are severed pursuant to Rule 14. Rule 8(b) allows multiple offenses to be joined if part of a common scheme or plan or if they are of the same or similar character. The trial court, before trial, must grant a severance of offenses mandatorily joined under Rule 8(a) where it is necessary for a fair determination of the defendant's guilt or innocence of each offense. Tenn. R. Crim. P. 14(b)(2)(I). Rule 14 grants the accused the right to a severance of offenses permissibly joined under Rule 8(b) unless: (1) the offenses are part of a common scheme or plan, and (2) the evidence of one would be admissible upon the trial of the others. Tenn. R. Crim. P. 14(b)(1); Spicer, 12 S.W.3d at 443.

Where offenses are "part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others," the trial court is allowed wide discretion in determining whether to sever offenses. Shirley, 6 S.W.3d at 247. A decision whether to sever offenses under Rule 14(b)(1) will turn on the facts of each case; therefore, a trial court's decision regarding severance will be reversed only where the "court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." Id. (citations omitted).

In determining whether a severance is mandated, the primary inquiry is whether the evidence of one crime would be admissible in the trial of the other offense if the two charges were tried separately. Id.; Spicer, 12 S.W.3d at 445. The courts should look to Tennessee Rule of Evidence 404(b) for guidance in determining whether the evidence of the other offense is admissible. See Shirley, 6 S.W.3d at 247-48. Rule 404(b) excludes evidence of a defendant's "other crimes, wrongs, or acts" if offered only to show the defendant's propensity to commit such "crimes, wrongs, or acts;" however, if the evidence is otherwise relevant to a material issue, Rule 404 does not prohibit its admission. State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999). Not only must the evidence be relevant, but the probative value of the evidence must not be outweighed by its prejudicial effect. Spicer, 12 S.W.3d at 445.

The court must also determine if the offenses qualify as a common scheme or plan. Tenn. R. Crim. P. 14(b)(1); Moore, 6 S.W.3d at 240. There are three categories of common scheme or plan evidence: (1) distinctive design or signature crimes; (2) a larger continuing plan or conspiracy; and (3) same criminal transaction. Moore, S.W.3d at 240; Shirley, 6 S.W.3d at 248.

For a distinctive design to exist among multiple offenses, the *modus operandi* of the offenses "must be substantially identical and must be so unique that proof the defendant committed the other offenses fairly tends to establish that he also committed" the charged offense. Moore, 6 S.W.3d at 240 (quoting Bunch v. State, 605 S.W.2d 227, 230 (Tenn. 1980)). Mere similarity between offenses or the fact that a defendant has committed a series of crimes is insufficient to prove the offenses are part of a common scheme or plan. Id. at 241.

In this case, the indictment was time specific on counts one and two but was open-dated on the remaining six counts. The trial court, in considering the defendant's motion to sever, specifically found that the evidence of the other offenses would be admissible if tried separately as part of a larger continuing plan by the defendant. "[A]dmission of evidence of other crimes which tends to show a common scheme or plan is proper to show identity, guilty knowledge, intent, motive, to rebut a defense of mistake or accident, or to establish some other relevant issue." Moore, 6 S.W.3d at 239 n.5 (quoting State v. Hallock, 875 S.W.2d 285, 292 (Tenn. Crim. App. 1993)). The defendant, in his interview, offered as explanation for his exposed condition that he had forgotten to zip his pants. He further attempted to deflect suspicion on another relative whom he stated had visited in the victim's house and was an acknowledged homosexual. Furthermore, in our view, the other offenses would be admissible in demonstrating a continuing plan and method. Contrary to the defendant's assertion in the interview, the victim's parents were unaware of his visitations to the victim's bed. The defendant on each occasion waited until the household members were asleep before making his way to the victim's bed. We conclude that evidence of these crimes would have been relevant and admissible to show his intent and motive, guilty knowledge, and the lack of mistake. We affirm the trial court's denial of the motion for severance.

Defendant's Interrogation

The defendant's final issue concerns the admission of the defendant's videotaped statement as given during a custodial interrogation. The basis for the defendant's objection to portions of the statement is lack of relevance and/or the prejudicial effect of the statements. Specifically, the defendant objects to the statements by the defendant that he was a homosexual, had used marijuana in the past, and had been sexually victimized himself as a child. The defendant also sought to bar opinions rendered by the interrogating detective of the defendant's guilt.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence which is not relevant is not admissible. Tenn. R. Evid. 402. Relevance is determined by the issues presented for resolution in the trial which, in turn, are determined by the elements of the offense charged and the defense asserted by

the accused. State v. Dubose, 953 S.W.2d 649, 653 (Tenn. 1997). The standard of review of admissibility of evidence under Tennessee Rules of Evidence 401 and 402 is abuse of discretion. Id. at 652.

During the defendant's interrogation, the defendant spoke of why he had moved back to the victim's family house. The defendant stated he was removing himself from some bad practices and specifically mentioned marijuana use. When questioned, he said he had last smoked marijuana about three weeks earlier. These statements were irrelevant to the issues at hand in this proceeding and should have been redacted. However, there was no emphasis placed on these admissions and in the context of the entire trial, we cannot say that the admission violated a substantial right or, in our view, affected the judgment. We therefore deem this as harmless error. Tenn. R. Crim. Proc. 36(b).

In the early stage of the interrogation, the defendant stated that he was a practicing homosexual and currently had no significant partner. Later in the interview, he appeared to minimize this aspect of his life. He stated that he had only three homosexual experiences and did not like them.

The defendant now contends that these statements revealing his homosexuality were irrelevant and unfairly prejudiced him. We would agree that, standing alone, the fact that the defendant is a homosexual does not tend to establish his guilt on these offenses. This court in State v. Ronald Jennings, C.C.A. No. 247 (Tenn. Crim. App. at Knoxville, Sept. 7, 1989), 1989 Tenn. Crim. App. LEXIS 646, *7, addressed the issue of allowing cross-examination of a defendant concerning his homosexuality. We stated then that "[t]he evidentiary fact of the appellant's homosexuality did not constitute evidence of a prior bad act. It was rather an evidentiary truth about his person, his physical being."

In light of other evidence introduced, we conclude that the defendant's homosexual status was relevant and admissible. Evidence concerning a criminal defendant's character may become admissible when it logically tends to prove material issues which fall into one of the following categories: (1) the use of motive and common scheme or plan to establish identity; (2) to establish the defendant's intent in committing the offense at trial; and (3) to rebut a claim of mistake or accident if asserted as a defense. State v. Thacker, 164 S.W.3d 208, 239-40 (Tenn. 2005). Here, the defendant claimed he inadvertently forgot to zip his pant's fly after using the bathroom. The fact that the defendant was sexually attracted to males made this claim of mistake less probable. The language of Tennessee Rule of Evidence 403 strongly suggests that relevant evidence should be admitted if the balance between the probative value and the prejudicial effect is close. See Neill P. Cohen, et al., Tennessee Law of Evidence § 403.4 at 4-61 (5th ed. 2005). Under the facts of this case, we conclude that the defendant's admission of his homosexuality is relevant.

The redacted version of the defendant's interrogation deleted the defendant's statements that he had been the victim of sexual molestation. To the extent that the defendant now objects to the deletion of his offer to take a polygraph, we do not agree that the deletion was error. Because

polygraph results have consistently been viewed as inherently unreliable and inadmissible, so too is a defendant's offer to submit to a polygraph. <u>State v. Hartman</u>, 42 S.W.3d 44, 61 (Tenn. 2001).

There being no reversible error, the defendant's judgments of conviction are hereby affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE