# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 18, 2012 Session

## STATE OF TENNESSEE v.  JERRY KIRKPATRICK

### Appeal from the Criminal Court for Knox County
### No.  95499  Jon Kerry Blackwood, Judge

---

### No.  E2011-01091-CCA-R3-CD - Filed January 9, 2013

---

The defendant was convicted of burglary and theft, both Class D felonies.  The defendant was sentenced to two concurrent seven-year terms in the Department of Correction.  On appeal, the defendant claims that the trial court erred by admitting evidence of the defendant's participation in an additional burglary and by ordering him to serve his sentence in confinement.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**.

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Keith E. Lowe (at sentencing and on appeal) and Leslie M. Jeffress (at trial), for the appellant, Jerry Kirkpatrick.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Randy Nichols, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On August 25, 2010, the defendant, Jerry Kirkpatrick, was indicted on one count of burglary in violation of Tennessee Code Annotated section 39-14-402 and one count of theft of property with a value of at least $1,000 but less than $10,000 in violation of Tennessee Code Annotated section 39-14-403.  The charges against the defendant stemmed from the

burglary of a Dollar General store located on Middlebrook Pike in Knox County on January 19, 2009. During this burglary, two men were caught by the store's video surveillance camera removing the safe from the store's office after the phones lines to the store had been cut and the store's alarm siren had been smashed. The defendant was tried on these charges before a jury of his peers on May 9, 2011.

Prior to trial, the court heard argument concerning a motion *in limine* filed by the defendant seeking to exclude evidence concerning the defendant's participation in other, similar burglaries on grounds that this evidence should be excluded under Rule 404(b). The State argued that evidence concerning at least one other subsequent attempted burglary, the "Grainger County case," fell within an exception to Rule 404(b), because the evidence was relevant and necessary for purposes of establishing the defendant's identity. The State argued that this attempted burglary was sufficiently similar to the burglary at issue in the present case to satisfy the requirements of Rule 404(b) because both crimes involved three men burglarizing Dollar General stores, using the same practice of cutting telephone wires and physically knocking out the stores' audible alarm systems before ultimately removing the stores' safes. In response, the defendant conceded that it was "pretty clear" that his brother had participated in both burglaries, and he acknowledged that the second participant, Mr. Daniel Phelps, was expected to testify at trial that the defendant was the third man involved in both burglaries. However, the defendant argued that the third person involved in the present burglary could not be positively identified and that it was inappropriate for a jury to reason that this third individual was the defendant simply because he may have been involved in a subsequent attempted burglary in Grainger County. After hearing these arguments and the State's representations concerning what the proof at trial would show, the trial court found: (1) that identity was a material issue in the case, and (2) "[b]ased upon the statements of counsel about the facts of the case . . . the proof is clear and convincing" that the two burglaries were sufficiently similar in nature to be admissible under Rule 404(b). The trial court also concluded that the probative value of the testimony at issue was not outweighed by the danger of unfair prejudice to the defendant.

At the defendant's trial, Mr. Benjamin Kramer testified that in January of 2009 he was employed as the manager of the Dollar General store on Middlebrook Pike in Knoxville, Tennessee. He testified that on January 19, 2012, he went to open the store around 6:00 a.m. and noticed that the store's alarm light had been knocked out of the ceiling. He testified that he called the police and carefully entered the store, where he discovered the office door was open and the store's safe was missing.

While on the stand at trial, Mr. Kramer was shown several pictures of the crime scene, which he identified and which were entered into evidence. He was also shown a video. Mr. Kramer identified this video as footage of his office that was taken by one of his store's

video surveillance cameras. Mr. Kramer testified that the video depicted two men with a bag of tools entering the store's office, lifting the store's safe onto a dolly, and wheeling it out.

Mr. Kramer testified that the store's safe contained deposits from the previous day, including cash, checks, and loose change. He estimated that the total amount contained in the safe was between $5,000 and $7,000. The witness testified that the safe itself was worth approximately $2,000 and that it was no longer serviceable after it was recovered. Before concluding, Mr. Kramer testified that his store was located in Knox County and that no one had permission to remove the safe and its contents from the store.

Mr. Daniel Phelps testified that he was presently incarcerated on burglary charges and that he had been charged with stealing on numerous occasions. He testified that in return for his testimony, the State had agreed to write a letter to the parole board recommending that he receive parole. He testified that the State's agreement to provide this letter was conditioned upon his testifying truthfully.

Mr. Phelps testified that on January 19, 2009, he was involved in the burglary of a Dollar General store on Middle brook Pike in Knox County, Tennessee. He testified that this burglary was planned by the defendant and Chris Kirkpatrick, and both of the Kirkpatrick brothers participated in it. He testified that on the date in question the three of them traveled to the store in question around midnight. He testified that he dropped the brothers off and then drove a quarter mile up the road to watch for the police. He testified that both the brothers were wearing masks, and they carried a purple burglary bag with them containing sledgehammers, crowbars, screwdrivers, and the like. Mr. Phelps testified that he acted as a lookout for the crew for three or four hours and that he made several cell phone calls to Chris Kirkpatrick during this time period. Eventually, the brothers called him and informed him that they had the store's safe in their possession. He pulled up in the car and the brothers loaded it into the trunk.

Mr. Phelps testified that afterward they all drove to the defendant's house, where they broke open the safe. He testified that they found $5000 inside. He testified that they split this money three ways and each took approximately $1700. He testified his girlfriend was also present at the house when this occurred. He testified that afterward, he and the brothers loaded the empty safe back into his car and threw it in a creek behind the Kmart on Broadway Street.

Mr. Phelps testified that ten days later, he and the Kirkpatrick brothers were involved in an attempted burglary of a Dollar General store in Grainger County. He testified that all three men met at the defendant's house and then drove to the store in question. He testified that he and Chris Kirkpatrick got out and "scoped" out the store while the defendant drove

around and generally acted as a lookout. He testified that while he acted as a lookout from approximately an eighth of a mile away, Chris Kirkpatrick went around the building, cut the alarm system, and knocked off the alarm's siren. He testified that the burglary was interrupted when five or six police units pulled into the parking lot. He testified that he and Chris Kirkpatrick ran away (separately), and he made it about a half mile away before calling one of his friends to come pick him up.

After his friend picked him up, Mr. Phelps received a call from Chris Kirkpatrick asking him to come pick him up as well, and Mr. Phelps and his friend did so. He testified that as they were driving away, he saw his own car—an Oldsmobile Bravada—pulled over on the side of the road. They pulled over to see if the defendant was still inside. At that point, they were "swarmed" by the police and taken into custody. While he was in custody, Mr. Phelps told the police about his own and the Kirkpatrick brothers' involvement in the Middlebrook Pike and Grainger County burglaries. He also told the police about the tool bag and showed them where it was located.

At this point during Mr. Phelps' testimony, the store security footage from the burglary of the Dollar General store on Middlebrook Pike was played again for the jury. Mr. Phelps identified the defendant as one of the two individuals appearing in that video footage. On cross-examination, Mr. Phelps was questioned concerning numerous inconsistencies between his recent testimony and his earlier statements to police.

Ms. Heather Moore, Mr. Phelps' former girlfriend, testified that on January 18, 2009, she had just finished spending a normal day with Mr. Phelps when he left with Chris Kirkpatrick. She testified that she drove over to the defendant's house and found all three men there. She testified that she stayed there through the morning hours. At some point, all three men left without telling her where they were going. She fell asleep on the couch, but she eventually awoke when the men came through the back door making "a lot of loud noises." She saw them carrying a safe with a blanket draped over the top of it. She testified that they carried the safe into a bedroom and closed the door, and afterward she heard a "lot of loud beating noises, clanging metal." After about an hour, they opened the door and she saw the safe lying on the ground with the door open. The men were putting various tools—including an axe head, a sledgehammer, a crow bar, and some screwdrivers—into a bag. She saw Mr. Phelps receive some money, which he shared with her. She heard the defendant and his brother discuss throwing the safe into the creek behind a Kmart. Then all three men left, and she never saw the safe again. During cross-examination, Ms. Moore was also questioned extensively concerning discrepancies in her recent testimony and her prior statements to police.

Detective Scott Webb of the Knox County Sheriff's Office testified that he

-4-

investigated a burglary of the Dollar General store on Middlebrook Pike on January 19, 2009. He testified that he initially made contact with the store's manager by cell phone because the store's phone lines were out. He testified that he found this fact to be significant because a similar method of operation had been used in numerous other Dollar General store burglaries. He testified that during his investigation he learned that the alarm horn outside of the business had been knocked down and that the burglars had entered from the rear of the building, which was also similar to the other burglaries. Detective Webb testified that he collected the store's surveillance camera video footage, which the jury had recently watched. Detective Webb testified that he learned during his investigation that approximately $5,000 had been stolen from the store's safe and about $500 worth of damage had been done to the store's alarm system.

Detective Webb testified that on January 29, 2009, he was conducting surveillance of Mr. Phelps' house as part of a joint task force investigation. He observed two vehicles, one of which was an Oldsmobile Bravada, leave that house and travel to the defendant's house. Around 2:00 a.m., he saw a vehicle leave the defendant's house. He and other officers followed the vehicle, and they identified the defendant, Chris Kirkpatrick, and Mr. Phelps as its occupants when the three exited their vehicle while stopping for gas. They followed the vehicle to the vicinity of a Dollar General store located in the town of Blaine in Grainger County, Tennessee.

Detective Webb testified that he and the other officers concealed their vehicles around a nearby repair shop that "kind of looked like a junkyard." From there, they witnessed the Oldsmobile Bravada, now containing only a single occupant, driving up and down the street. Detective Webb testified that the car went up and down the street at least six or seven times during a ten or fifteen minute period. Detective Webb testified that he called Grainger County sheriff's deputies to notify them concerning a possible burglary in progress.

Detective Webb testified that he saw Chris Kirkpatrick in front of the store swinging a long, dark object at the ceiling. He testified that he gave his officers the order to "come in and take them down," and they attempted to do so. Afterward, he determined that the alarm siren box had been torn from the store's ceiling and was lying on the sidewalk, and the store's phone lines had been cut at the utility pole. He testified that these two facts were similar to the burglary at the Dollar General store on Middlebrook Pike.

Detective Webb testified that they did not apprehend anyone at the store. However, they sent a unit to intercept the Oldsmobile Bravada as it drove back by. They arrested the defendant after finding him inside, secured the car, and transported him back to the police station. Detective Webb testified that they intended to move the vehicle to another location to see if anyone would approach it, but they never had the chance to do so because another

vehicle drove by honking its horn and flashing its lights before pulling into the driveway right in front of him. He and the other officers immediately took its occupants, including Chris Kirkpatrick and Mr. Phelps, into custody.

Detective Webb testified that Mr. Phelps answered all of his questions during the ensuing interrogation. He testified that Mr. Phelps confessed to his involvement in both burglaries and identified the defendant and Chris Kirkpatrick as his partners. Afterward, Mr. Phelps led him to a purple tool bag (which they had captured on video at various locations that had been burglarized), as well to some radios and some masks—all of which were located in a field near a tree line. Detective Webb testified that when Chris Kirkpatrick was arrested, he was wearing the same brown sweatshirt with an orange insignia that police had seen in the video footage from the burglary of the Dollar General store on Middlebrook Pike. Detective Webb testified that a safe linked to the burglary of the Dollar General store on Middlebrook Pike was recovered on January 20, 2009, in a creek behind the Kmart on Broadway Street. Finally, Detective Webb testified that the charges against the defendant concerning the attempted burglary of the Dollar Store in Grainger County had been dropped.

On cross-examination, Detective Webb testified that the defendant did not resist or attempt to evade arrest on the night of the attempted burglary of the Dollar General Store in Grainger County. He testified that the defendant had a cell phone on him when he was arrested but that he did not check the defendant's cell phone to determine which numbers had been recently called. Detective Webb testified that no fingerprints were discovered during his investigation of the burglary of the Dollar General store on Middlebrook Pike because the burglars were wearing gloves. He also testified that nothing appearing in the photographs of that burglary identified the person who had accompanied Chris Kirkpatrick during that burglary.

Following this testimony, the State rested. The defendant took the stand in his own defense and testified that on January 19, 2009, he had a normal Sunday and watched presidential inaugural pre-celebrations on T.V. Around 7:00 p.m., Chris Kirkpatrick, Mr. Phelps, and Ms. Moore came over to his house and told him they were going to a poker game. The defendant testified that after they left, he stayed at home and waited for another friend of his to come over to clean the carpets. He testified that Chris Kirkpatrick arrived back at his house shortly after midnight and went to sleep. The defendant testified that at 8:15 a.m. the following morning Chris Kirkpatrick went over to Mr. Phelps' house. The defendant testified that he did not burglarize a Dollar General store that evening and that no one brought a safe over to his house and broke it open. He testified that "all was quiet" at his house that night.

The defendant testified that on January 29, 2009, Chris Kirkpatrick arrived at his

house, followed shortly afterward by Mr. Phelps and Ms. Moore, who arrived between 9:00 p.m. and 10:00 p.m. The defendant testified that Ms. Moore ask him to take Mr. Phelps and Chris Kirkpatrick to a poker game, and he agreed. He testified that he drove the two men to the town of Blaine to attend the poker game around 2:00 a.m. He testified that Mr. Phelps told him to drop them off at a yellow house with a yellow garage (and he identified this house on a map provided to him while he was on the stand). He testified that after he left he made a couple of wrong turns in his effort to leave the area. When he re-entered Knox County, he was pulled over and arrested at gunpoint. The defendant testified that he was never told at any point that any burglary was going to take place at a Dollar General store.

The defendant also testified that he had three prior felony convictions plus an escape attempt on his record. He testified that he had not been convicted of a crime since 1994.

On cross-examination, the defendant acknowledged that he lived with his brother, who had pled guilty to the burglary at issue and to the attempted burglary of the Dollar General store in Grainger County. The defendant testified that Mr. Phelp's testimony was not true and emphasized that no stolen safe was ever brought into his house. The defendant testified that when he dropped off his brother to play poker on the night of January 29, 2009, his brother did not have a big bag full of tools; instead, he only had a small bag containing poker chips and three packs of cards.

Following the defendant's testimony, the defense rested, the parties gave closing arguments, and the court instructed the jury. The jury retired to begin deliberations at 4:20 p.m., and returned with a verdict finding the defendant guilty as charged at 5:13 p.m. The trial court immediately held a sentencing hearing, at which the State entered the defendant's presentence report into evidence and another of the defendant's brothers, Mr. Gilbert Taylor, testified that the defendant was a "more passive" person who was dominated by his younger brother, Chris Kirkpatrick.

Based on a notice of enhancement filed by the State, the trial court found that the defendant was a Range II offender by virtue of having four prior felony convictions in Knox County. As a Range II offender convicted of two Class D felonies, the defendant was eligible to serve four to eight years on each count. The trial court found that two enhancement factors were present—that the defendant had a criminal history above that necessary to establish his range and that the defendant had shown an unwillingness to comply with sentences involving a release into the community. The trial court found that these two enhancement factors outweighed the one mitigating factor which the court found to be applicable—that the defendant's conduct neither caused nor threatened to cause serious bodily injury. The trial court then sentenced the defendant to seven years in the Department of Correction on each count, with the sentences to run concurrently. The trial court denied

the defendant's request for alternative sentencing on the grounds that "measures less restrictive have been applied to defendant unsuccessfully." The judgments were entered on July 5, 2012.

The defendant filed a motion for new trial on August 4, 2011. The trial court denied the motion on the merits on December 14, 2011. The defendant filed a notice of appeal on January 11, 2012, and we now proceed to consider his appeal.

## ANALYSIS

The defendant claims that the trial court erred by admitting evidence concerning his other criminal acts (specifically, the attempted burglary of the Dollar Store in Grainger County), by failing to impose the minimum sentence, and by denying him an alternative sentence. For the reasons that follow, we affirm the judgments of the trial court.

## I.

The defendant claims that the trial court erred by admitting evidence concerning the defendant's involvement in the subsequent attempted burglary of the Dollar General store in Grainger County, on the grounds that this testimony should have been excluded under Tennessee Rule of Evidence 404(b) as propensity or character evidence that was offered by the State to prove that the defendant acted in conformity with that bad character trait on the date of the burglary. We disagree.

As a general rule, all relevant evidence is admissible. *See* Tenn. R. Evid. 402. However, evidence concerning other "bad acts" committed by the defendant is often inadmissible. Tennessee Rule of Evidence 404(b) provides: "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Evidence of other crimes, wrongs, or bad acts committed by a defendant may, however, be admissible for other purposes. "[O]ther purposes . . . include . . . identity of the defendant." *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004). "When evidence that the defendant committed another crime is offered to prove his identity as the perpetrator of the crime on trial, the *modus operandi* of the other crime and of the crime on trial must be substantially identical and *must be so unique* that proof that the defendant committed the other offense fairly tends to establish that he also committed the offense with which he is charged." *Bunch v. State*, 605 S.W.2d 227, 230 (Tenn. 1980).

Rule 404(b) contains strict procedural requirements before evidence concerning a

-8-

defendant's other crimes can be admitted on grounds other than as character evidence:

The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. Rule 404(b). The record reflects that the court below plainly complied with three of these procedural requirements: the trial court held a pretrial hearing outside the presence of the jury, determined that the identity of the defendant was a material issue (and stated that it was admitting the evidence of the attempted burglary for this reason), and concluded that the probative value of the evidence did not outweigh the danger of unfair prejudice. We discern no error in the trial court's actions with respect to these procedural requirements

The trial court also claimed that the remaining requirement was satisfied, finding that proof concerning the attempted burglary was clear and convincing. However, as the defendant points out, this conclusion is more problematic. The trial court took no evidence during the pretrial jury-out Rule 404(b) hearing. The trial court only heard arguments from the parties. It is somewhat incongruous for a trial court to find that a fact has been established by "clear and convincing evidence" when no evidence whatsoever has been placed before it. That this incongruity occurred in this case is somewhat puzzling in light of the fact that the Rule 404(b) hearing at issue was conducted on the day of (and immediately prior to) the defendant's trial, when presumably Detective Webb and the State's other witnesses were available to give testimony concerning the attempted burglary in Grainger County (as they did later in the day), and the State could have easily presented any other evidence needed.

However, notwithstanding the obvious tension that is created in this type of situation when the plain text of Rule 404(b)(3) is read literally, this court has held that Rule 404(b)'s

procedural requirements may still be satisfied even though a trial court has based its Rule 404(b)(3) decision solely on the arguments of the parties and the State's representations concerning the evidence that it intends to present at trial. *See, e.g., State v. Denise Dianne Brannigan*, No. E2011-00098-CCA-R3-CD, 2012 Tenn. Crim. App. LEXIS 389, at **23-32 (Tenn. Crim. App. June 13, 2012). As this Court has explained, Rule 404(b) motions are motions *in limine*, and such motions "are frequently decided merely on the basis of statements or arguments of counsel setting out the proposed evidence." *Id.* at *25. Should the evidence ultimately presented at trial fail to live up to the representations made by the State at the Rule 404(b) hearing, trial courts retain the authority to revisit their pretrial ruling(s), and in extreme cases may even declare a mistrial. *Id.* at **26-27; *see also State v. Gilley*, 173 S.W.3d 1, 6 (Tenn. 2005) ("[T]rial courts must be cognizant that if pretrial evidentiary rulings are made, they may need to be reconsidered or revised based on the evidence presented at trial.").

Consequently, we conclude that the trial court substantially complied with the procedural prerequisites of Rule 404(b) in this case. "If the procedures in Rule 404(b) are substantially followed, the trial court's decision will be given great deference and will be reversed only for an abuse of discretion." *State v. James*, 81 S.W.3d 751, 759 (Tenn. 2002). An abuse of discretion only occurs if the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (citations omitted).

After reviewing the record as a whole, we cannot conclude that the trial court's decision to deny the defendant's motion *in limine* was contrary to logic or reasoning. The identity of the third participant in the burglary of the Dollar General store on Middlebrook Pike was the central issue at the defendant's trial. Evidence concerning the defendant's participation in an attempted burglary of a Dollar General store in Grainger county (involving the same other individuals) was material to establishing the defendant's identity as the third participant in the burglary of the Dollar General store on Middlebrook Pike. The *modus operandi* of the two crimes was substantially identical. Both crimes involved three men, one of whom remained in a car and drove around acting as a mobile lookout. Both crimes involved the same type of victim (a Dollar General store). Both crimes occurred late at night. Both crimes involved the cutting the store's telephone lines. Both crimes involved the smashing of the store's alarm siren. The same purple bag of burglary tools was used in both crimes. Finally, two of the three participants admitted their involvement in both crimes, and one specifically identified the defendant as the third participant.

The evidence presented at trial also clearly supports the trial judge's conclusion that the attempted burglary of the Dollar General store in Grainger county in fact occurred, and the defendant participated in it. Mr. Phelps testified that he personally participated in both

burglaries and that the defendant actively planned and participated in those burglaries. Detective Webb testified that he personally witnessed the defendant driving Mr. Phelp's Oldsmobile Bravada up and down the road in front of the Dollar General store acting as a mobile lookout. He testified that he watched the defendant's brother knock out the store's alarm siren and that the store's phone line had been cut. He testified that he arrested the defendant while he was driving Mr. Phelp's car shortly after the burglary attempt was thwarted. The defendant's brother, with whom the defendant lived, pled guilty to participating in both crimes. In short, the evidence supports the trial judge's conclusion that the attempted burglary occurred, that the defendant participated in it, and that the crimes were sufficiently similar in terms of their *modus operandi* that evidence of the attempted burglary was relevant to the issue of establishing the defendant's identity in the case at hand.

The defendant also argues that the trial court erred by ruling that the probative value of this evidence was not outweighed by its potential to cause unfair prejudice to the defendant. In this regard, the defendant appears to argue that the trial court should have found that the evidence concerning the Grainger County case was of minimal relevance because it was largely redundant with the State's other evidence establishing the defendant's identity. The defendant urges that, at the time of the Rule 404(b) hearing, the State intended to introduce two eyewitnesses who would establish the defendant's identity as the perpetrator of the offense in question and consequently "clearly had other means of establishing the identity of the [defendant]." The defendant specifically directs our attention to our supreme court's admonition in *Bunch* that Rule 404(b) "should not be circumvented by admitting evidence of another crime to show identity of the defendant if . . . the identity of the accused is established by other evidence and, therefore, is no longer in issue." *Bunch*, 605 S.W.2d at 230.

However, the language from *Bunch* relied on by the defendant is directed toward situations in which the defendant has already conceded the issue of his identity or, as the quote expressly states, the issue of identity is "no longer in issue" for some other reason. *Id.* It does not imply that evidence concerning other crimes committed by a defendant should suddenly be accorded diminished relevance simply because the State also has other evidence that might tend to prove the defendant's identity. Throughout the trial, the defendant expressly, vigorously and consistently denied his identity as the third burglar. He vehemently denied participating in either burglary on the stand. At the time the evidence concerning the Grainger County case was admitted, the issue of the defendant's identity was not only still in play, it was the central issue of the trial.

That the State also had other means of establishing the defendant's identity available to it does not render the evidence of his participation in the attempted burglary in Grainger County any less relevant. Short of simply conceding the issue of identity, the defendant is

not permitted to dictate the manner in which the State chooses to prove the necessary elements of its case in situations such as this one. The defendant's claim that the trial court erred by denying his motion *in limine* is denied.

## II.

The defendant claims that the trial court erred by denying him an alternative sentence and by failing to sentence him to the statutory minimum. The defendant's argument concerning the latter issue is not accompanied by any citation to authority, and thus has been waived. *See* Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). Notwithstanding this waiver, we have reviewed both of the defendant's claims concerning his sentencing, and we discern no error.

We review a defendant's challenge to an in-range sentence under an abuse of discretion standard. *State v. Bise*, 380 S.W.3d 682, ___, 2012 Tenn. LEXIS 645, at *73 (Tenn. 2012) ("[Today we adopt an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act."). "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at *70. An in-range sentence imposed by a trial court will be upheld "[s]o long as there are other reasons consistent with the purposes and principles of sentencing" which justify the sentenced imposed. *Id.* A trial court's decision to deny a defendant's request for an alternative sentence is also reviewed under an abuse of discretion standard. *State v. Christine Caudle*, No. M2010-01172-SC-R11-CD, 2012 Tenn. LEXIS 824, at *16 (Tenn. Nov. 27, 2012) ("[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence."). As we have discussed, a trial court will only be found to have abused its discretion if it applies the wrong legal standard or reaches a decision that is contrary to logic and reasoning. *Shirley*, 6 S.W.3d at 247.

The defendant's sentences are within the relevant range in light of his offender class and the grade of his offenses. A Range II offender committing Class D felonies faces potential sentences of four to eight years. *See* T.C.A. § 40-35-112(b)(4). The defendant was sentenced to seven years on each count. Consequently, we review the defendant's sentences under an abuse of discretion standard.

First, the defendant argues that the trial court erred by denying him an alternative

sentence on the grounds that measures less restrictive than confinement had been tried in the past without success. While the defendant acknowledges that he has had several past probation revocations, he argues that "his most recent trouble with probation would have been over ten years prior to the day he was sentenced." Second, the defendant argues that the trial court erred by imposing seven-year sentences after concluding that the two applicable enhancement factors outweighed the single applicable mitigating factor. Again, the defendant argues that his criminal history and probation revocations were more than ten years old at the time of his sentencing.

These arguments are unavailing, as accepting them would require this court to engage in the kind of micro-management of the trial court's sentencing decisions that is plainly no longer permissible under *Bise* and *Caudle*—if indeed it ever was. After reviewing the record, we cannot conclude that the trial court's decision to impose concurrent seven-year sentences for the defendant's crimes defies all logic and reason. The defendant's criminal history includes felony convictions and other criminal behavior above that necessary to establish his range as well as several prior probation revocations. Ancient or no, it was not an abuse of discretion for the trial court to consider these factors. The trial court's decision to sentence the defendant toward the higher end of his range and to order the defendant's incarceration is consistent with the principles and purposes of the Sentencing Act. The defendant's claim that the trial court erred by denying him an alternative sentence and by sentencing him above the statutory minimum is denied.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JOHN EVERETT WILLIAMS, JUDGE