# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT KNOXVILLE
## Assigned on Briefs July 23, 2013

## STATE OF TENNESSEE v. GUY L. HINES

**Appeal from the Criminal Court for Hamilton County**
**No. 278443 Rebecca J. Stern, Judge**

---

**No. E2012-02456-CCA-R3-CD - Filed November 5, 2013**

---

The defendant was found guilty after a trial by jury of one count of robbery, a Class C felony, and one count of assault, which, depending on the circumstances, can be either a Class A misdemeanor or a Class B misdemeanor, but which the trial court treated as a Class A misdemeanor. The defendant was sentenced to four years for the robbery and eleven months and twenty-nine days for the assault. On appeal, the defendant claims that the trial court erred by failing to dismiss the robbery charge due to a defect in the indictment. The defendant also claims that the trial court erred in an evidentiary ruling and by failing to grant him a new trial on the grounds that the prosecutor made improper comments during voir dire. After carefully reviewing the record and the arguments of the parties, we find that the defendant's arguments lack merit, but we conclude that the trial court erroneously classified the defendant's assault conviction as a Class A misdemeanor when it was properly classified as a Class B misdemeanor. We modify the judgment of the trial court accordingly and impose a modified sentence of six months on this count. The judgments of the trial court are otherwise affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed as Modified.

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and JEFFREY S. BIVINS, JJ., joined.

Robin R. Flores, Chattanooga, Tennessee (on appeal); Mark E. Stephens, District Public Defender; and Blake Murchinson, Assistant District Public Defender (at trial), for the appellant, Guy L. Hines.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Randall Nichols, District Attorney General; and William Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

The defendant was indicted on one count of robbery in violation of Tennessee Code Annotated section 39-13-401, a Class C felony, and one count of sexual battery in violation of Tennessee Code Annotated section 39-13-505, a Class E felony. With respect to the robbery charge, the defendant's indictment specifically alleged as follows:

> That Guy L. Hines heretofore on September 29, 2010, in the County aforesaid, did unlawfully and intentionally or knowingly take property from the person of Peggy Patten, by violence or putting the victim in fear, in violation of Tennessee Code Annotated 39-13-401, against the peace and dignity of the State.

The defendant did not challenge the wording of this count in the indictment prior to trial.

The defendant was tried by jury on September 20, 2012. Prior to trial, the defendant provided notice of an alibi defense. During voir dire, the prosecutor made the following comments to the jury concerning that defense:

> Okay. Now, the defense to this case is alibi. It wasn't me. When you look at that proof with regard to the alibi versus the other witnesses, can you judge them all equally and not make a decision at all until you've heard all the evidence from the stand here? Can we do that?

The defendant made no contemporaneous objection to these comments.

At trial, the State presented the testimony of several law enforcement witnesses before presenting the testimony of the victim, Ms. Margaret Patton. The victim testified that on September 29, 2010, she was working at a business called "the Antique Market" in Hamilton County. She testified that the business sold "French furniture, European antiques, fine art, rugs, accessories; that type of thing." She testified that while she was working that afternoon, she witnessed the defendant walking back and forth in front of her store, looking in through the front window. She testified that there were customers in her store most of the afternoon. She testified that by approximately 4:30 p.m., she had finished serving her last customers—an out-of-town couple—and her store was empty.

The victim testified that the defendant entered her store as soon as the couple left. She testified that she asked the defendant if she could help him, and the defendant said something about having a friend in the antique business. She testified that the defendant walked to the back of the store and then went briefly up into the second level of her split-level store to look around. After walking the premises, the defendant approached her at her desk. The victim testified that her desk was "U-shaped" and was located in a corner, meaning that she was trapped when the defendant approached her—there was "no back door" and "really no exit."

The victim testified that the defendant demanded money. She testified that she told the defendant "the money is locked up." She testified that as the defendant drew closer to her, she reached for her cell phone. In response, the defendant told her "don't make a call" and grabbed the cell phone out of her hand and put it in his pocket. She testified that afterward, the defendant "stuck one hand up [her] skirt," and she pushed it away. She testified that he then "stuck his other hand up the other side," and she pushed him away and told him to get out of her store.

The victim testified that she decided to try to bluff her way out of the situation. She told the defendant that she had seen him walking back and forth in front of her store and that she had already called the police, who were on their way. She testified that the defendant started backing up. She testified that she continued her ruse, and eventually the defendant left—but not before using his T-shirt to wipe off the store's door handle on his way out. She testified that her encounter with the defendant lasted for about five minutes and that she was face-to-face with the defendant for most of that time. She testified that she was panicked, afraid, and petrified with fear throughout the encounter.

The victim testified that the defendant was wearing a white T-shirt and white knee-length shorts on the day of the incident. She testified that the defendant had an odor. She also testified that the defendant's "mouth was sort of foamy" and had "a lot of spit." The victim testified that she had "absolutely no doubt" that the defendant was the individual who had taken her cell phone, run his hands up her skirt, and touched her private area on the day in question.

Ms. Allison Fellers testified that she lived on the same street as the victim's store. On the day in question, she was sitting on her porch with her dog when she noticed an African-American male riding on a bike back and forth directly in front of the victim's shop. She testified that she did not get a good look at the rider's face, but she saw that he was wearing a white shirt. She testified that some of the activity was captured on video by the surveillance camera at her store, which was located next door. On cross-examination, Ms. Fellers testified that she was unable to identify the individual that she saw on that day when she was shown a photographic array by the police during the ensuing investigation.

Ms. Melissa Smith testified that she worked at a home decor store on the same street as the victim's store. She testified that on the day in question, the defendant poked his head into her shop. When she asked the defendant if she could help him, "he just mumbled something and left." She testified that she continued to see the defendant "off and on that day going up and down the street on a blue bicycle." She testified that the defendant was wearing a white T-shirt and white pants.

Following this testimony, the State sought to introduce the testimony of Ms. Gena Soltau, who claimed that the defendant had assaulted her in a similar fashion in 2005. The trial court stopped the proceedings and conducted a jury-out hearing to determine whether the evidence was admissible pursuant to Tennessee Rule of Evidence 404(b). During the hearing, the trial court had Ms. Soltau take the stand for purposes of voir dire pertaining to the admissibility of her testimony.

Ms. Soltau testified that she had once owned a nursery a few blocks away from "the Antique Market." She testified that one Saturday afternoon, the defendant entered her store. She asked the defendant if she could help him, and he informed her that he was there to buy a plant for his mother. When the defendant wandered her store and started looking around, she became nervous. Eventually, the defendant asked her to come to the back of the business (where the greenhouse was located) and show him a particular plant. When she leaned over to get the plant, the defendant moved in "real close" behind her. She quickly handed the plant to the defendant and told him to give it to his mother. As she turned to walk away, the defendant grabbed her around her waist and shoulder and "started rubbing his front up and down [her] leg."

The witness testified that she struggled and told the defendant "we're not doing that." As she tried to escape, the defendant threw her to the ground and climbed on top of her. She testified that she started screaming, but the defendant kept putting his hand over her face and telling her to be quiet. The defendant then began running his hands up and down her legs. The witness testified that she told the defendant that she was pregnant in hopes of dissuading him from continuing the assault. The defendant paused for a moment, and the witness capitalized on the opportunity to push him off of her and run outside, where she stopped a passing vehicle and asked the driver to call the police. She saw the defendant flee the scene on a bicycle.

The witness testified that she learned from a mutual friend that the victim had also been attacked. She testified that she called the victim and asked the victim if her attacker was "a heavy set black guy." When the victim responded affirmatively, the witness told the victim that "Guy Hines got out of prison around Christmas time, you might want to check the sexual registry and see if it's him." The witness testified that the victim called her back

shortly to inform her that her attacker was indeed the defendant.

Following the hearing, the trial court held that portions of the witness's testimony were admissible for purposes of establishing the *modus operandi* and the identity of the attacker. The trial court found that both attacks happened in the same general location. The trial court observed that in both cases, the attacker went "into a store occupied by a single female" and attacked the woman after "pretending to shop." In both cases, the victims were "slim, light skinned, white women with pale blonde hair," and in both cases, the attacker used a bicycle. Given the level of similarity between the two attacks, the trial court held that the probative value of the evidence concerning the defendant's prior assault exceeded its potential to cause prejudice. However, the trial court ruled that although the witness could testify concerning the details of the attack itself, she could not mention the sex offender registry or reference the fact that the defendant had been tried and convicted for the assault.

The witness then took the stand and testified before the jury concerning the prior assault in a manner generally consistent with the court's instructions and her prior testimony. Following her testimony, the State rested. The defendant moved for a judgment of acquittal, and in response the trial court reduced the charge of sexual battery to attempted sexual battery, explaining that the State had failed to present any evidence that the defendant had actually made contact with the victim's genital area. The trial court otherwise denied the motion.

The defendant was advised of and waived his right to testify in his own defense pursuant to the procedures established in *Momon v. State*, 18 S.W.3d 152, 162-63 (Tenn. 1999). The defense presented the testimony of a single alibi witness, Mr. Clarence Graham, who testified that he generally drove the defendant to and from work every day because the defendant did not have a car. He testified that while he had no specific recollection of the defendant's activities on the day in question, he generally picked up the defendant at 7 a.m. and dropped him off at 5 p.m. He testified that the day after the incident, he went to pick up the defendant as usual, but the defendant was not there. He found this to be unusual.

After deliberation, the jury returned with a verdict finding the defendant guilty of robbery and simple assault. The trial court sentenced the defendant as a Range I, standard offender to four years for the robbery and to eleven months and twenty-nine days for the assault. Both the judgment form for the assault conviction and the length of the sentence imposed on this count by the trial court indicate that the court deemed the defendant's assault to be a Class A misdemeanor.

The defendant filed a timely notice of appeal. We proceed to consider his claims.

**ANALYSIS**

The defendant argues that the trial court erred by: (1) failing to dismiss the robbery count due to a defect in the indictment; (2) failing to grant the defendant a new trial due to improper comments made by the prosecutor during voir dire; and (3) admitting the testimony of Ms. Soltau concerning the defendant's prior sexual assault. Upon review, we hold that the defendant is entitled to no relief on these claims. However, as conceded by the State in its brief, the defendant's assault conviction should have been treated as a Class B misdemeanor. Consequently, we modify that judgment to reflect the defendant's conviction of a Class B misdemeanor and modify the sentence imposed to six months. Otherwise, we affirm.

**I.**

The defendant claims that the trial court erred by failing to dismiss the robbery count due to a defect in the indictment. Defendants have a right, guaranteed under both the federal and state constitutions, to be informed of the nature and cause of the accusations against them. *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). While our State once subjected indictments to strict pleading requirements, some time ago our courts abandoned such requirements on the grounds that they were an "embarrassment of technicalities that are empty and without reason, and tend to defeat law and right." *Id.* (quoting *State v. Cornellison*, 59 S.W.2d 514, 515 (Tenn. 1933)). Instead, "we now approach 'attacks upon indictments . . . from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding.'" *Id.* (quoting *United States v. Purvis*, 580 F.2d 853, 857 (5th Cir. 1978)). The validity of an indictment is a question of law which this court reviews *de novo*. *See id.* at 727.

"[T]he touchstone for constitutionality is adequate notice to the accused." *Id.* at 729. An indictment will not be held unconstitutional if it provides: (1) notice of the charge against which the accused must defend himself; (2) an adequate basis for the entry of a proper judgment; and (3) protection of the accused from double jeopardy. *Id.* at 727. Indictments in our state must also comply with certain longstanding statutory requirements:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in a manner so as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. In no case are the words "force and arms" or "contrary

to the form of the statute" necessary.

T.C.A. § 40-13-202 (2010).

The defendant claims that his indictment, which read, in pertinent part:

That Guy L. Hines heretofore on September 29, 2010, in the County aforesaid, did unlawfully and intentionally or knowingly take property from the person of Peggy Patten, by violence or putting the victim in fear, in violation of Tennessee Code Annotated 39-13-401, against the peace and dignity of the State.

was fatally defective because it failed to state that the property at issue was owned by the victim and that the defendant intended to deprive the victim of the property, two elements of crime of theft, *see* T.C.A. § 39-14-103, which is in turn an element of the crime of robbery, *see* T.C.A. § 39-13-401 (" Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear."). However, while proof pertaining to these two elements is essential in order to sustain a robbery conviction, the law is clear that the constitutional requirements necessary to sustain an indictment are less exacting. *See Hill*, 954 S.W.2d at 728 ("Obviously, the description of the proof necessary to sustain a conviction must be both more inclusive and conclusive than the language of an indictment.").

We hold that the language of the defendant's indictment suffices to pass constitutional muster. "[S]pecific reference to a statute within the indictment may be sufficient to place the accused on notice of the charged offense." *State v. Sledge*, 15 S.W.3d 93, 95 (Tenn. 2000). The defendant's indictment plainly indicates which statute he allegedly violated. Moreover, the facts contained in that indictment describing the defendant's alleged violation of that statute are sufficiently specific to provide the trial court with an ample basis on which to base a proper judgment. Nor can there be any serious doubt that, had the defendant been found not guilty, the language appearing in the indictment would have sufficed to allow him to claim the protection of double jeopardy. The defendant's claim that the trial court erred by failing to dismiss the robbery count due to a defect in the indictment is denied.

## II.

The defendant claims that the trial court committed plain error by failing to grant him a new trial due to improper comments made by the prosecutor. Specifically, the defendant claims that the following comments, which were made by the prosecutor during voir dire, "placed into the minds of the prospective jurors that [the defendant] had a duty to put on an

alibi defense when no such duty existed":

> Okay. Now, the defense to this case is alibi. It wasn't me. When you look at that proof with regard to the alibi versus the other witnesses, can you judge them all equally and not make a decision at all until you've heard all the evidence from the stand here? Can we do that?

The defendant made no contemporaneous objection to these remarks, and the issue has been waived accordingly. *See* Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). An error that has been waived may nonetheless be addressed on appeal under the "plain error" standard if: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *See State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000). All five factors must be established by the record before a reviewing court will find plain error, and a reviewing court need not address all five factors if any one factor indicates that relief is not warranted. *Id.* at 282-83.

In the case *sub judice*, the record does not reflect that any clear and unequivocal rule of law was breached in the court below. Although the defendant claims that the prosecutor's remarks erroneously implied that he had an affirmative duty to present evidence and improperly shifted the burden of proof concerning his alibi defense to him, we do not so interpret the prosecutor's remarks. The transcript reflects only that the prosecutor queried potential jurors concerning whether they could consider and weigh the testimony of alibi witnesses and other witnesses in the same fashion. There was nothing improper in the prosecutor posing such a question to the jury. While the prosecutor's question did assume that an alibi defense would be presented (a belief presumably grounded in the notice of intent to present an alibi defense which had been previously provided by the defendant), nothing in the prosecutor's remarks even obliquely references a duty on the part of the defendant to present any evidence or implies that the burden of presenting such a defense would rest with the defendant. The defendant's claim that the trial court committed plain error by failing to grant the defendant a new trial due to improper prosecutorial remarks is denied.

**III.**

Finally, the defendant claims that the trial court erred by admitting the testimony of Ms. Soltau concerning the defendant's prior assault on the grounds that her testimony was inadmissible pursuant to Tennessee Rule of Evidence 404(b). We find this claim to lack

merit.

As a general rule, all relevant evidence is admissible. *See* Tenn. R. Evid. 402. However, due to strong policy concerns relating to the presentation of negative character evidence, evidence concerning other crimes that have been committed by a particular defendant is often inadmissible. The general maxim that a defendant is not to be tried by reputation is reflected in Tennessee Rule of Evidence 404(b), which provides: "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Evidence of other crimes, wrongs, or bad acts committed by a defendant may, however, be admissible for other purposes. "'[O]ther purposes' . . . include . . . [the] identity of the defendant." *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004). "When evidence that the defendant committed another crime is offered to prove his identity as the perpetrator of the crime on trial, the modus operandi of the other crime and of the crime on trial must be substantially identical and must be so unique that proof that the defendant committed the other offense fairly tends to establish that he also committed the offense with which he is charged." *Bunch v. State*, 605 S.W.2d 227, 230 (Tenn. 1980).

Rule 404(b) contains strict procedural requirements before evidence concerning a defendant's other crimes can be admitted on grounds other than as character evidence:

The conditions which must be satisfied before allowing such evidence are:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. Rule 404(b). The record reflects that the court below complied with these procedural requirements. "If the procedures in Rule 404(b) are substantially followed, the trial court's decision will be given great deference and will be reversed only for an abuse of

discretion." *State v. James*, 81 S.W.3d 751, 759 (Tenn. 2002). An abuse of discretion only occurs if the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (citations omitted).

The defendant claims that the trial court erred in concluding that the two crimes had sufficiently similar *modos operandi* to be admissible under Rule 404(b). The defendant acknowledges that there is record evidence supporting the trial court's conclusions that: (1) the crimes were committed within blocks of each other, (2) the perpetrator pretended to shop prior to each attack, (3) the victim of each attack was a lone woman, and (4) the perpetrator of both attacks was seen riding a bicycle. However, the defendant claims that these similarities "do not rise to the level of a unique signature" and "the acts described by the trial court were of such a manner that any number of men could fit the bill."

We disagree. To be admissible as evidence of the defendant's identity, it suffices that the "methods used in committing the offenses . . . have 'such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons.'" *State v. Moore*, 6 S.W.3d 235, 240 (Tenn. 1999) (quoting *Harris v. State*, 227 S.W.2d 8, 11 (Tenn. 1950)). The fact that the perpetrator involved in both of these assaults utilized a bicycle as his means of locomotion and attacked women working alone at their place of business in broad daylight is, standing alone, sufficiently peculiar to peak the interest of a reasonable person. When combined with the numerous other similarities between the two crimes in terms of their location, the type of victim chosen, and the manner in which the assaults were committed, we simply cannot conclude that the trial court defied all logic and reasoning when it concluded that the methods used to commit the crimes were sufficiently similar to permit the admission of evidence pertaining to the earlier one pursuant to Rule 404(b). The defendant's claim that the trial court erred by admitting the testimony of Ms. Soltau is denied.

**IV.**

Although the issue is not raised by the defendant, the State, at the conclusion of its brief, requests without further explanation that the case be "remanded to the trial court for entry of a corrected judgment indicating a conviction for a Class B misdemeanor," rather than a Class A misdemeanor, with respect to the defendant's conviction for simple assault. After reviewing the record, we concur that the trial court erred by treating the defendant's assault conviction as a Class A misdemeanor rather than a Class B misdemeanor.

The crime of assault may constitute either a Class A misdemeanor or a Class B misdemeanor, depending on the type of assault committed. Tennessee Code Annotated

-10-

section 39-13-101 provides:

> Assault.
>
> (a) A person commits assault who:
>
> (1) Intentionally, knowingly or recklessly causes bodily injury to another;
>
> (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
>
> (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.
>
> (b) (1) Assault is a Class A misdemeanor unless the offense is committed under subdivision (a)(3), in which event assault is a Class B misdemeanor . . . .

While the evidence available to the State in this case might have supported an assault charge based on a violation of section 39-13-101(a)(2), which is a Class A misdemeanor, the defendant was not indicted on this charge and the jury was not instructed concerning this subsection as a lesser included offense of attempted sexual battery. Rather, with respect to assault as a potential lesser-included offense, the trial court instructed the jury as follows:

> Assault, extremely offensive, or provocati[ve] contact. Any person who commits an assault upon another is guilty of a crime. For you to find the defendant guilty of this offense the State must have proven beyond a reasonable doubt the existence of the following essential elements: One, that the defendant caused physical contact with the victim; and, two, a reasonable person would regard the contact as extremely offens[ive] or provocation; and three, the defendant acted intentionally or knowingly.

Thus, the defendant's jury was only instructed regarding assault committed under section 39-13-101(a)(3), which constitutes a Class B misdemeanor pursuant to section 39-13-101(b)(1). By its verdict, the jury necessarily convicted the defendant only of this lesser-grade offense.

Because the judgment form with respect to the defendant's assault conviction reflects an incorrect offense grade, we modify that judgment to reflect the defendant's assault as a

-11-

Class B misdemeanor.  Because the trial court sentenced the defendant to the maximum available sentence with respect to the higher-grade offense, we see no need to remand for re-sentencing, and we instead opt to simply modify the defendant's sentence for assault to six months—the maximum available sentence for a Class B misdemeanor conviction.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are modified in part and affirmed in part.

_____
JOHN EVERETT WILLIAMS, JUDGE